## ALABAMA STATE FEDERATION OF LABOR ET AL. *v.* McADORY ET AL.

No. 588.   Argued April 3, 4, 1945.—Decided June 11, 1945.

452

*Messrs. Horace C. Wilkinson* and *Joseph A. Padway,* with whom *Mr. Herbert S. Thatcher* was on the brief, for petitioners.

*Messrs. James A. Simpson, John W. Lapsley* and *John E. Adams,* with whom *William N. McQueen,* Acting Attorney General of Alabama, was on the brief, for respondents.

Briefs were filed by *Solicitor General Fahy, Messrs. Robert L. Stern, Alvin J. Rockwell, Miss Ruth Weyand* and *Mrs. Elizabeth W. Weston* on behalf of the United States; *Messrs. Arthur Garfield Hayes* and *Osmond K. Fraenkel* on behalf of the American Civil Liberties Union; and *Mr. Paul O'Dwyer* on behalf of the Workers Defense League, as *amici curiae,* in support of petitioners.

Mr. Chief Justice Stone delivered the opinion of the Court.

This case was brought in the state courts of Alabama for a declaratory judgment adjudicating the constitutional validity of certain sections of the Bradford Act, No. 298, Alabama Laws of 1943 (Code 1943, Tit. 26 §§ 376 *et seq.*). The principal question is whether petitioners' contentions are so related to any case or controversy presented by the

record that this Court may appropriately pass upon them in a declaratory judgment proceeding.

Petitioners are four affiliated, unincorporated labor organizations, the American Federation of Labor, and the United Brotherhood of Carpenters and Joiners of America, which are national labor organizations, and two Alabama labor organizations, and an individual who is a citizen of Alabama and a member of petitioner, Local Union No. 103, United Brotherhood of Carpenters and Joiners of America.

Petitioners brought the present suit in the Alabama Circuit Court for Jefferson County against respondents, officers of Jefferson County, charged with the duty of enforcing the Bradford Act. They prayed a declaratory judgment that the Act as a whole and specifically §§ 7, 15, and 16, among others, are unconstitutional and void under the federal and state constitutions.

After a trial upon a stipulated statement of facts, certain affidavits and the testimony of witnesses, the circuit court held the Act as a whole, and specifically § 7 of the Act, to be valid and constitutional. It declined as "inappropriate" to make declarations as to the validity of §§ 15 and 16. On appeal, petitioners assigning as error the circuit court's failure to pass upon the constitutionality of §§ 15 and 16, and to declare those sections and § 7 unconstitutional, the state supreme court held all three sections valid and constitutional. 246 Ala. 1, 18 So. 2d 810. We granted certiorari, 323 U. S. 703, upon a petition which presented the contentions [1] that §§ 7 and 16 impose a prior general restraint on petitioners' freedom of speech and assembly guaranteed by the First and Fourteenth Amendments to the Constitution and conflict with the National Labor Relations Act by depriving them of rights under

---

[1] Under the view we take of the case it is unnecessary to determine whether petitioners have properly raised in the state courts the federal questions which they urge here with respect to §§ 15 and 16.

it; that §§ 7, 15 and 16 are an arbitrary and unreasonable exercise of the state police power which denies petitioners due process and equal protection of the laws in violation of the Fourteenth Amendment; and that §§ 15 and 16 are so ambiguous and uncertain in their requirements as to deny petitioners due process of law.

The Bradford Act is a comprehensive enactment regulating labor unions having members who are employees working in the State of Alabama. It establishes a Department of Labor under the supervision and control of a director of labor; it sets up mediation machinery for the settlement of labor disputes. It requires all labor organizations within the provisions of the Act to file with the Department various reports and financial statements and to pay filing fees. It regulates some phases of the internal affairs and activities of labor organizations, and various aspects of picketing, boycotting and striking. It imposes civil liability and criminal penalties for violation of its provisions.

Section 7 provides that "Every labor organization functioning in Alabama shall within sixty days after the effective date of this chapter, and every labor organization hereafter desiring to function in Alabama shall, before doing so, file a copy of its constitution and its by-laws and a copy of the constitution and by-laws of the national or international union, if any, to which the labor organization belongs, with the department of labor . . . All changes or amendments to the constitution or by-laws, local, national or international, adopted subsequent to their original filing must be filed with the department of labor within thirty days after" their adoption.

Section 7 further provides that "Every labor organization functioning in the State of Alabama and having twenty-five or more members," shall file annually with every member of the organization and with the Director of the Department of Labor a verified written report giving

detailed information as to its name, the location of its offices, the officers of the organization, their salaries, wages, bonuses, and other remuneration, the date of the election of officers, the number of its paid up members, and a complete financial statement showing all receipts and disbursements with the names of recipients and purpose thereof, and a complete statement of the money and property owned by the organization. Section 7 also declares, "It shall be unlawful for any fiscal or other officer or agent of any labor organization to collect or accept payment of any dues, fees, assessments, fines, or any other monies from any member while such labor organization is in default with respect to filing the annual report . . ."

Section 15 reads: "It shall be unlawful for any labor organization, any labor organizer, any officer, agent, representative or member of any labor organization, or any other person, to collect, receive or demand . . . from any person, any fee, assessment, or sum of money whatsoever, as a work permit or as a condition for the privilege of work; provided, however, this shall not prevent the collection of initiation fees or dues."

Section 16 prescribes: "It shall be unlawful for any executive, administrative, professional, or supervisory employee to be a member in, or to be accepted for membership by, any labor organization, the constitution and by-laws of which permit membership to employees other than those in executive, administrative, professional or supervisory capacities, or which is affiliated with any labor organization which permits membership to employees other than those in an executive, administrative, professional, or supervisory capacity. The provisions of this Section shall not be construed so as to interfere with or void any insurance contract now in existence and in force." Section 18 enacts, "If any labor organization violates any provision of this chapter, it shall be penalized civilly in a sum not exceeding one thousand dollars ($1,000.00) for each such

·violation . . . The doing of any act forbidden or declared unlawful by the provisions of this chapter . . . shall constitute a misdemeanor, and shall be punishable by a fine . . . or by imprisonment."

*Infringement of freedom of speech and assembly by sections 7 and 16.*

Petitioners do not deny the authority of the state to regulate labor unions. They do not contend that all their practices shown by the record or all their activities required to be reported by § 7 are within the protection of the constitutional provisions preserving the right to free speech or assembly, or that the requirement of § 7 that petitioners file reports, of itself, infringes their right of free speech. But construing the words of § 7 which provide that labor organizations "functioning" in the state shall file the prescribed statements or reports, and the further requirement that every labor organization "desiring to function" in Alabama shall, before doing so, file certain prescribed documents, petitioners attack the section as a licensing provision and assail its validity on the ground that as such it is a restraint upon their freedom of speech and assembly.

No officer or representative of the state is empowered by the terms of the section to grant or withhold a license authorizing a labor organization to function within the state. The State Supreme Court so held in this case. The argument is that compliance with § 7 is made prerequisite to the functioning of any labor organization within the state, and that one of the functions of petitioners is the exercise of their right of freedom of speech and assembly to advance the interests of labor and labor organizations by winning public support for their program, through education and dissemination of information. They say that the requirement of a license, before a labor organization can function within the state, to be secured by filing the

requisite statements and reports, is an unconstitutional restraint on their right of free speech and assembly. Specifically they argue that if they fail to file any of the statements required by § 7 and afterwards function as a labor union within the state, by exercising their right of free speech and assembly, they may be subjected to the criminal penalties imposed by § 18, and may also be enjoined from so functioning by a civil suit in equity in the state courts.

In considering this objection to § 7 the Supreme Court of Alabama did not elaborate on the meaning of the terms "function" or "functioning" as used in the statute. It indicated that they embrace the conduct of the business activities of labor organizations within the state, such as the assessment and collection of fines and dues, the collection of monies and their disbursement, the management of their property, the election of their officers and the appointment of their agents, and the maintenance and defense of suits in the courts. And it added " 'Function,' as used in this Act, simply means a labor organization, whether incorporated or not, engaged in business in this State, and in the character of business thus indicated, for the promotion of the interests of its members. True, as a part of its functioning, and a part only, the assemblage of its members for discussion is had, but this is merely incidental."

This language may be taken to suggest that assemblies of labor organizations which are incidental to their business activities are within the reach of the Act. But we are left uninformed, and, without the application of the statute by the state courts to some concrete set of facts, we are unable to say, whether the statute is to be construed as meaning that "functioning" by a labor organization which has not complied with § 7 by filing the prescribed reports is itself a violation of the Act subjecting it to cumulative penalties under § 18.

On the face of the statute failure to file the required statements or reports entails a civil and possibly also a criminal penalty. The collection of dues after such a failure is by § 7 declared to be unlawful and is therefore by § 18 made a misdemeanor. But the statute nowhere in terms makes it an offense or unlawful for a labor organization to continue otherwise to function after failing to file the required report or statement. So far as appears the Supreme Court of Alabama has not construed the penal provisions of the statute or determined that the failure of a labor organization to file the documents specified in § 7 entails any consequences other than the specified penalty for the failure to file, with a further penalty if without filing the labor organization or its officers continue to collect dues. Neither of these sanctions is asserted or shown to operate as an injunction restraining freedom of speech or assembly. Nor does it appear that the Alabama courts have held that a labor organization failing to file may be enjoined from functioning.

Moreover if "functioning" after failure to file is itself a violation we do not know whether the statute will be interpreted as penalizing a union merely for engaging in those business activities which are not contended to be within the protection of the right to free speech or, on the other hand, for holding meetings which are wholly unrelated to its business activities. In any event we are not advised, nor has the state court said, what assemblies or meetings of a labor organization are so related to its business activities as to be deemed "incidental" to them so as to be within the reach of the statute.

Obviously no decision of the constitutional issues now posed could be made in this suit, and no opinion could be written, without considering all and deciding some at least of these questions of statutory interpretation. No state court has decided them, briefs and argument offer us little aid in their solution, and no solution which we could

tender would be controlling on the state courts. The record supplies us with no concrete state of facts to which the challenged sections, when construed, could be applied. For all that we know the only penalty to which petitioners may be subjected for violation of § 7 is a single penalty for failure to file the required statement or report, and their continued functioning in the state would subject them to no further penalty or restraint. And assuming that the penalties or threat of penalties of the statute may be so applied as to operate as a present restraint more than does the bare existence of the civil and criminal penalties for libel, it nowhere appears that the statutory penalties are being so threatened or applied.

It is not contended that the statute in any way restricts the freedom of assembly and speech of labor organizations after they comply with the filing requirements of the statute, and it nowhere appears that any of the petitioners are so situated that they could not comply with the statute within the period allowed by it for compliance, without incurring any penalty for noncompliance. The attack thus made on § 7 is as to the constitutionality of the section on its face, without reference to its application to any particular defined set of facts, other than those generally catalogued in the section itself. We cannot say that §§ 7 and 18 could not be so construed and applied as not to restrain petitioners' functioning in the state in the exercise of their constitutional right of free speech and assembly. We are thus invited to pass upon the constitutional validity of a state statute which has not yet been applied or threatened to be applied by the state courts to petitioners or others in the manner anticipated. Lacking any authoritative construction of the statute by the state courts, without which no constitutional question arises, and lacking the authority to give such a controlling construction ourselves, and with a record which presents no concrete set of facts to which the statute is to be ap-

plied, the case is plainly not one to be disposed of by the declaratory judgment procedure.

The requirements for a justiciable case or controversy are no less strict in a declaratory judgment proceeding than in any other type of suit. *Nashville, C. & St. L. R. Co.* v. *Wallace,* 288 U. S. 249; *Aetna Life Ins. Co.* v. *Haworth,* 300 U. S. 227; *Maryland Casualty Co.* v. *Pacific Co.,* 312 U. S. 270, 273; *Great Lakes Co.* v. *Huffman,* 319 U. S. 293, 299, 300; *Coffman* v. *Breeze Corps.,* 323 U. S. 316. This Court is without power to give advisory opinions. *Hayburn's Case,* 2 Dall. 409; *United States* v. *Evans,* 213 U. S. 297, 301; *Muskrat* v. *United States,* 219 U. S. 346; *Stearns* v. *Wood,* 236 U. S. 75; *Coffman* v. *Breeze Corps., supra.* It has long been its considered practice not to decide abstract, hypothetical or contingent questions, *Giles* v. *Harris,* 189 U. S. 475, 486; *District of Columbia* v. *Brooke,* 214 U. S. 138, 152; *Anniston Mfg. Co.* v. *Davis,* 301 U. S. 337, 355; *Electric Bond Co.* v. *Securities & Exchange Commission,* 303 U. S. 419; *United States* v. *Appalachian Power Co.,* 311 U. S. 377, 423, or to decide any constitutional question in advance of the necessity for its decision, *Charles River Bridge* v. *Warren Bridge,* 11 Pet. 420, 553; *Trade-Mark Cases,* 100 U. S. 82, 96; *Liverpool, N. Y. & P. S. S. Co.* v. *Emigration Comm'rs,* 113 U. S. 33, 39; *Burton* v. *United States,* 196 U. S. 283, 295; *Arkansas Oil Co.* v. *Louisiana,* 304 U. S. 197, 202, or to formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied, *Liverpool, N. Y. & P. S. S. Co.* v. *Emigration Comm'rs, supra,* 39; *White* v. *Johnson,* 282 U. S. 367, 371; *Allen-Bradley Local* v. *Board,* 315 U. S. 740, 746–7, or to decide any constitutional question except with reference to the particular facts to which it is to be applied, *Hall* v. *Geiger-Jones Co.,* 242 U. S. 539, 554; *Corporation Comm'n* v. *Lowe,* 281 U. S. 431, 438; *Continental Baking Co.* v.

*Woodring,* 286 U. S. 352, 372; *Atlantic & Pacific Tea Co.* v. *Grosjean,* 301 U. S. 412, 429–30.

A law which is constitutional as applied in one manner may, it is true, violate the Constitution when applied in another. *Field* v. *Clark,* 143 U. S. 649, 694–7; *Dahnke-Walker Co.* v. *Bondurant,* 257 U. S. 282, 289; *Concordia Ins. Co.* v. *Illinois,* 292 U. S. 535; *Associated Press* v. *Labor Board,* 301 U. S. 103. But "Since all contingencies of attempted enforcement cannot be envisioned in advance of those applications" this Court has felt bound to delay passing on "the constitutionality of all the separate phases of a comprehensive statute until faced with cases involving particular provisions as specifically applied to persons who claim to be injured." *Watson* v. *Buck,* 313 U. S. 387, 402. All these considerations forbid our deciding here the constitutionality of a state statute of doubtful construction in advance of its application and construction by the state courts and without reference to some precise set of facts to which it is to be applied. The declaratory judgment procedure may be resorted to only in the sound discretion of the Court and where the interests of justice will be advanced and an adequate and effective judgment may be rendered. *Great Lakes Co.* v. *Huffman, supra; Coffman* v. *Breeze Corps., supra.*

Like objections are made and like questions raised with respect to § 16 which makes it unlawful for any "executive, administrative, professional, or supervisory employee to be a member in, or to be accepted for membership by, any labor organization" which admits to membership employees other than persons of these classes. The section does not define executive, administrative, professional or supervisory employees. No proceeding appears to have been brought in any state court for enforcement of the section, and we are without the aid of any authoritative construction of its provisions. The record discloses only general allegations in the words of the stat-

ute that petitioners admit to their membership both employees who are and employees who are not of those classes. The record gives no information as to the duties of such supervisory employees other than petitioner Jones. As to them the Court is thus asked to rule upon the constitutionality of a state statute which petitioners challenge as too vague and indefinite to satisfy constitutional requirements, which does not appear to have been applied or construed by the state court, upon a record which affords an inadequate factual basis for determining whether the statute is applicable to any of them, or if so whether as applied to them the statute would violate freedom of speech and assembly.

A further and conclusive ground for our declining to pass on the validity of § 16 is the ruling of the State Supreme Court that that section is inapplicable wherever it would otherwise "interfere with or void any insurance contract now in existence and in force." The record without disclosing the details shows that petitioners provide insurance benefits for their members as such, and that petitioner Jones is a member of petitioner United Brotherhood of Carpenters and Joiners of America, and as a member is entitled to such benefits. Whether and to what extent § 16 can be deemed applicable to the members of any of the other petitioners because of existing insurance arrangements does not appear. Only those to whom a statute applies and who are adversely affected by it can draw in question its constitutional validity in a declaratory judgment proceeding as in any other. *Marye* v. *Parsons,* 114 U. S. 325; *Tyler* v. *The Judges,* 179 U. S. 405; *Turpin* v. *Lemon,* 187 U. S. 51, 60, 61; *Arizona* v. *California,* 283 U. S. 423, 463, 464; *First National Bank* v. *Tax Comm'n,* 289 U. S. 60, 65; *Ashwander* v. *Tennessee Valley Authority,* 297 U. S. 288; *Anderson Nat. Bank* v. *Luckett,* 321 U. S. 233, 242.

*Conflict of sections 7 and 16 with the National Labor Relations Act.*

Petitioners also urge that § 7 and § 16 conflict with the National Labor Relations Act, 49 Stat. 449, 29 U. S. C. § 151 *et seq.,* in that Alabama is likely to assert the power to enforce those sections by depriving petitioners of their right to function in the state as collective bargaining representatives under the National Labor Relations Act. They point out that the National Act, § 8 (5), unconditionally requires an employer to bargain with the representatives of his employees. They contend that § 7 thus conflicts with the National Act and that the enforcement of the former tends to hinder and interfere with the performance of petitioners' functions under the National Act.

Petitioners also urge that § 16 conflicts with the National Labor Relations Act in that under its provisions, as construed and administered by the National Labor Relations Board, employees in certain industries, who exercise supervisory functions, may join and be represented by unions which also admit to their membership nonsupervisory employees. Petitioners say that any labor organization which has failed to file the report as required by § 7, or which admits to its union a supervisory employee contrary to § 16, will be precluded from acting as a bargaining agent under the National Labor Relations Act.

Assuming as we do for present purposes that these contentions are sound, it does not follow that there is no constitutional scope for application of §§ 7 and 16. The National Labor Relations Act does not extend to all industries and all employees. It is only applicable to those employments in which strikes and labor disputes would affect interstate commerce and are found to be such by the National Labor Relations Board. *Labor Board* v. *Jones & Laughlin Corp.,* 301 U. S. 1, 38–40; *Labor Board* v. *Fainblatt,* 306 U. S. 601, 604; *Polish Alliance* v. *Labor Board,* 322 U. S. 643, 647.

The record contains evidence of only the most general character that there are industries located within the state whose employees are "within the jurisdiction of the Alabama State Federation of Labor and Local No. 103, or of the other A. F. of L. unions within the class for which the complaint has been filed, which are engaged . . . in interstate commerce." There is evidence generally as to the practice of the National Labor Relations Board in certifying unions as bargaining representatives. But it nowhere affirmatively appears that any of petitioners act as bargaining representatives of employees in industries within the state which are subject to the National Labor Relations Act.

What is more important for present purposes is that it does not appear that there are any of petitioners which do not represent employees in industries which are not subject to the National Labor Relations Act. To decide the question of the alleged conflict of §§ 7 and 16 with the National Labor Relations Act and the effect of it, it would be necessary to know whether petitioners or some of them represent employees in industries not subject to the National Labor Relations Act, and the extent to which for that reason they may be rightly subject to local regulation even though they also represent employees in other industries which are subject to the National Act. The record is silent as to which of petitioners represent the one, or the other, or both. Hence we have no state of facts before us which would enable us to determine the extent to which the several petitioners may be subject to local regulation which does not conflict with the National Act, and thus we are unable to say to what extent the challenged sections are valid or invalid under the National Act.

When a statute is assailed as unconstitutional we are bound to assume the existence of any state of facts which would sustain the statute in whole or in part. *Metropolitan Casualty Ins. Co.* v. *Brownell*, 294 U. S. 580, 584 and

cases cited; *United States* v. *Carolene Products Co.,* 304 U. S. 144, 152, 153. Since petitioners or some of them are not shown to function exclusively as bargaining representatives for employees in industries subject to the National Labor Relations Act, we cannot say that §§ 7 and 16 could in no circumstances be validly applied to them. The extent to which in fact the sections are or may be so applied, and in what circumstances, does not appear. In this state of the record we are not called upon to say whether or to what extent they may be constitutionally applied.

Moreover, for reasons already stated in our discussion of the alleged infringement of freedom of speech and assembly, we cannot assume that the failure to file reports will result in the exclusion of petitioners, or any of them, from functioning in the state, or visit any consequences upon them other than the penalty for failure to file. We therefore have no question before us of a statute which has been construed to operate either by its penal sanctions or by the aid of injunction to prevent petitioners, or any of them, from functioning within the state for noncompliance with § 7. Compare *Hill* v. *Florida, post,* p. 538. Nor can we say in the absence of any showing to the contrary that the filing of information returns will impose such burdens on any of petitioners as to interfere with the performance of their functions under the National Labor Relations Act in cases where that Act is applicable.

And finally, as we have pointed out, a further ground for our not considering the validity of § 16 and whether it conflicts with the National Labor Relations Act is the ruling of the State Supreme Court that that section is inapplicable wherever it would otherwise interfere with or render ineffective any existing contract of insurance. In view of this holding, it is incumbent on petitioners to show, as they have failed to do, to what extent § 16 can be

taken to be applicable to any of them because of existing insurance arrangements with union members.

We can be asked to condemn a state statute as in conflict with national legislation only if the conflict is clearly shown, *Allen-Bradley Local* v. *Board, supra,* 749; *Townsend* v. *Yeomans,* 301 U. S. 441, 454, and cases cited, and only by those who show that they are adversely affected by the alleged conflict with national power. Each of the contentions which petitioners make with respect to the conflict of §§ 7 and 16 with the National Labor Relations Act could readily be adjudicated and disposed of in an adversary suit drawing in question their validity as applied to specific states of fact, in which respondents could both challenge the facts and the applicability to them of the statute. In the present suit we find that both the uncertainty as to the construction of the sections and the uncertainty as to the facts to which they are to be applied preclude the adjudication which the petitioners seek.

*The validity of § 15 under the due process clause.*

Section 15 makes it "unlawful for any labor organization, any labor organizer, any officer, agent, representative or member of any labor organization, or any other person, to collect, receive or demand, . . . from any person, any fee, assessment, or sum of money whatsoever, as a work permit or as a condition for the privilege of work." But it excludes from the operation of the Act the collection of "initiation fees or dues." Petitioners assert that the section applying as it does to every form of collection of money, other than initiation fees or dues, "as a work permit or as a condition for the privilege of work," prevents numerous legitimate and desirable labor union practices and hence is so harsh, arbitrary and unreasonable in its application as to infringe due process. A number of examples are given, such as union fees charged to non-union apprentices in return for their

"guidance and teaching" by union members, fees charged to non-union members for participation in the benefits of existing all-union collective bargaining contracts, fees charged for the transfer from one union to another pending admission to union membership in the latter, and the like.

Although it appears that the constitutions of petitioners, or some of them, contain a provision permitting them to charge a fee to union members working in a union "jurisdiction" outside that in which they live, it nowhere appears that such fees or any of the others specified by petitioners are being or will be charged, or that respondents or the courts have determined that they are unlawful as not being initiation fees or dues, or that any form of legal proceeding based on such a contention is contemplated. For these reasons the Supreme Court of Alabama declined to consider whether § 15 was applicable to petitioners, saying, "Whether or not certain practices to which counsel refer are to be construed as coming within the provisions of the Act are questions which will arise when the proper case is presented."

To say that the statute would be unconstitutional if applied to such exactions is not to say that the section cannot constitutionally apply to exactions which the legislature could have thought coercive, oppressive or otherwise unjust. It is not denied that labor organizations have indulged in such practices, and obviously we cannot assume in the face of the constitutional objections that they do not, or that the state could not make § 15 applicable to them. As the record presents no concrete case to which petitioners' contentions as to § 15 apply, we are unable to say whether its application in any given case not now before us would or would not be constitutional. *Liverpool, N. Y. & P. S. S. Co.* v. *Emigration Comm'rs, supra*, 39; *Barker Co.* v. *Painters Union*, 281 U. S. 462; 463, 464. Determination of these questions as well as

the proper construction of the section which is challenged as vague and indefinite must await its application to some specific state of facts.

## Other contentions.

Only a word need be said as to various other objections not already disposed of, which have been raised but not seriously pressed. It is said that the requirement of § 7 to file information statements and reports is so burdensome on labor organizations as to deny due process of law. It is not denied but is affirmed that labor organizations are subject to regulation, *Allen-Bradley Local* v. *Board, supra,* and that in the interests of regulation the government may require information from those subject to it. *Thomas* v. *Collins,* 323 U. S. 516, 532; cf. *Northwestern Bell Tel. Co.* v. *Nebraska Comm'n,* 297 U. S. 471, 478; *Natural Gas Co.* v. *Slattery,* 302 U. S. 300, 306 and cases cited. It is said that in order to comply with the statute it would be necessary for each union, regardless of its size and finances, to hire public accountants or others with specialized knowledge of accounting practices and procedure, such as working men do not have, and that such a requirement is beyond constitutional power. But these assertions are unsupported by the record. It does not show to what extent the transactions of petitioners, or any of them, are complicated or detailed or other facts which would enable us to say that petitioners are unable to comply with the statute without expert assistance. Since petitioners' reliance is upon the burdensome operation of the statute on them, we are not bound to speculate upon the nature or extent of the burden. We can hardly make pronouncement on their contentions in a declaratory judgment proceeding where the record does not disclose the extent of the burden, if any. Whether the information demanded is so extensive, detailed, and therefore burdensome, as to pass the bounds of what the state may reasonably require

can be determined only in the light of the circumstances in which the statute is to be applied.

The objection that §§ 7 and 16 of the state statute are too vague and uncertain to meet constitutional requirements is one which cannot appropriately be considered in a declaratory judgment proceeding in the federal courts, in advance of their authoritative construction by a state court. As we have said, it is the duty of the federal courts to avoid the unnecessary decision of constitutional questions. *Siler* v. *Louisville & Nashville R. Co.,* 213 U. S. 175, 191; *Light* v. *United States,* 220 U. S. 523, 538; *Blair* v. *United States,* 250 U. S. 273, 279; *Crowell* v. *Benson,* 285 U. S. 22, 62, and cases cited. But the use of the declaratory judgment procedure to test the validity of a state statute for vagueness and uncertainty invites rather than avoids the unnecessary decision of the constitutional question.

Most courts conceive it to be their duty to construe a statute, whenever reasonably possible, so that it may be constitutional rather than unconstitutional. *Stephenson* v. *Binford,* 287 U. S. 251; *Moore Ice Cream Co.* v. *Rose,* 289 U. S. 373, 379; *Screws* v. *United States, ante,* p. 91, and cases cited; cf. *Spector Motor Co.* v. *McLaughlin,* 323 U. S. 101; *Ex parte Endo,* 323 U. S. 283. And the Alabama courts adhere to that rule. *Mobile* v. *Board,* 180 Ala. 489, 501, 61 So. 368; cf. *Duncan* v. *Rudulph,* 245 Ala. 175, 176, 16 So. 2d 313; *Goodman* v. *Carroll,* 205 Ala. 305, 87 So. 368; *Cloverdale Homes* v. *Town of Cloverdale,* 182 Ala. 419, 62 So. 712. State courts, when given the opportunity by the presentation to them for decision of an actual case or controversy, may, and often do, construe state statutes so that in their application they are not open to constitutional objections which might otherwise be addressed to them. *Cox* v. *New Hampshire,* 312 U. S. 569, 575; compare *Schuylkill Trust Co.* v. *Pennsylvania,* 302 U. S. 506 with *Schuylkill Trust Co.* v. *Pennsylvania,* 296 U. S. 113. In advance of an authoritative construction of a state

statute, which the state court alone can make, this Court cannot know whether the state court, when called on to apply the statute to a defined case or controversy, may not construe the statute so as to avoid the constitutional question. For us to decide the constitutional question by anticipating such an authoritative construction of the state statute would be either to decide the question unnecessarily or rest our decision on the unstable foundation of our own construction of the state statute which the state court would not be bound to follow. *Spector Motor Co.* v. *McLaughlin, supra,* 105; see also *Vandenbark* v. *Owens-Illinois Co.,* 311 U. S. 538, 543; *Huddleston* v. *Dwyer,* 322 U. S. 232. Such is not the function of the declaratory judgment.

The extent to which the declaratory judgment procedure may be used in the federal courts to control state action lies in the sound discretion of the Court. See *Great Lakes Co.* v. *Huffman, supra.* It would be an abuse of discretion for this Court to make a pronouncement on the constitutionality of a state statute before it plainly appeared that the necessity for it had arisen, or when the Court is left in uncertainty, which it cannot authoritatively resolve, as to the meaning of the statute when applied to any particular state of facts. In any event the parties are free to litigate in the state courts the validity of the statute when actually applied to any definite state of facts, with the right of appellate review in this Court. In the exercise of this Court's discretionary power to grant or withhold the declaratory judgment remedy it is of controlling significance that it is in the public interest to avoid the needless determination of constitutional questions and the needless obstruction to the domestic policy of the states by forestalling state action in construing and applying its own statutes. See *Great Lakes Co.* v. *Huffman, supra,* 300, *et seq.*

The contention that the Act denies equal protection because its provisions, or some of them, have not been ex-

472

tended to business corporations or associations or to labor organizations which are subject to the Railway Labor Act, 45 U. S. C. § 151 *et seq.*, is without substance. The Constitution does not oblige a state to regulate or reform all types of associations and organizations, or none. It may begin with such as in its judgment most need regulation. *Carroll* v. *Greenwich Insurance Co.*, 199 U. S. 401, 411; *Keokee Coke Co.* v. *Taylor*, 234 U. S. 224, 227; *Bunting* v. *Oregon*, 243 U. S. 426; *Sproles* v. *Binford*, 286 U. S. 374, 396; cf. *West Coast Hotel Co.* v. *Parrish*, 300 U. S. 379, 400, and cases cited. And for this reason it may exclude from regulatory measures organizations which it has reason to believe are already appropriately regulated by either state or national legislation. *Ziffrin, Inc.* v. *Reeves*, 308 U. S. 132, 140; cf. *Union Bank & Trust Co.* v. *Phelps*, 288 U. S. 181, 186.

We would not have granted certiorari to review so unsubstantial a question, and all the other issues, as presented by the record now before us, are, for reasons which we have given, inappropriate for decision in a declaratory judgment proceeding. The writ of certiorari will therefore be

*Dismissed.*