**CHANNEL 10, INC., and Dennis Anderson, Plaintiffs,**

v.

**Richard GUNNARSON and Alexander Lukovsky, Defendants.**

**No. 5–71 Civ. 33.**

United States District Court,
D. Minnesota,
Fifth Division.

Feb. 7, 1972.

Hammer, Halverson, Watters & Bye by William D. Watters, Duluth, Minn., for plaintiffs.

Thomas E. Plante, City Atty. by Daniel C. Bergland, Asst. City Atty., Duluth, Minn., for defendants.

NEVILLE, District Judge.

This is a civil rights action seeking a declaratory judgment under 28 U.S.C. § 2201 and injunctive relief to redress an alleged deprivation of constitutional rights under 42 U.S.C. § 1983. Jurisdiction is found under 28 U.S.C. §§ 2201 and 1343(3). Plaintiff Channel 10, Inc., is one of three television broadcasting stations in the City of Duluth, Minnesota. Plaintiff Dennis Anderson is a news reporter and cameraman employed by Channel 10, Inc. Defendants Gunnarson and Lukovsky are uniformed officers of the police department of the City of Duluth.

After an initial hearing on plaintiff's motion for a temporary injunction, the parties agreed to consolidate the main action with the preliminary motion as contemplated by Rule 65 of the Federal Rules of Civil Procedure and to submit the issues on a stipulation of facts, various affidavits and briefs. The case is more properly for determination under the declaratory judgment statute, 28 U. S.C. § 2201 than for decision on a request for an injunction and plaintiffs' counsel, realizing this, withdrew plaintiffs' demand for a permanent injunction and asks only for a declaration of the parties' rights at this time.

The facts as stipulated, and which the court so finds are as follows:

'1. That on March 29, 1971, Dennis A. Anderson, an employee of Channel 10, Incorporated, was in the ordinary course of his duties as a news reporter covering a purported burglary at the Ski Hut, located on the southwest corner of Eleventh Avenue East and Fourth Street in Duluth, Minnesota.

2. That Sgt. Richard Gunnarson and Lt. Alexander Lukovsky are both police officers with the Duluth Police Department and on the above mentioned date were two of the police officers responding to the purported break in at the Ski Hut.

3. That Dennis A. Anderson had in his possession a Sylvania Sun Gun, which is designed to provide light for the taking of motion pictures at night.

4. That Dennis A. Anderson first stayed at the back of the building while the police investigation continued.

5. That plaintiff Anderson and defendants Gunnarson and Lukovsky believed there were suspects in the building upon arrival, a fact later confirmed.

6. That Sgt. Gunnarson arrived at approximately 12:15 A.M. and entered the building along with other officers and captured the suspects.

7. That Dennis A. Anderson, upon learning of the capture, approached the front of the shop and started shooting film through a store window.

8. That after a brief time the police started to lead the suspects out handcuffed behind their backs. Dennis A. Anderson, standing on a public boulevard or sidewalk eight to ten feet from the store door, started to take pictures using the Sun Gun.

9. That when the light came on Sgt. Gunnarson, who was opening the door for the other officers and prisoners, shouted "No Pictures!", and then approached Anderson saying "No Pictures!" again. The light was turned off, not being on for more than five seconds.

10. That Sgt. Gunnarson demanded and received the WDIO camera from Dennis A. Anderson.

11. That a short time later Anderson and Lukovsky had a short discussion over the camera in which Lukovsky told Anderson he would give the camera back to him on the condition that Anderson check with the Detective Bureau on whether the film contained information detrimental to the prosecution of the subjects and whether or not the subjects filmed were juveniles.

12. That after Anderson stated he could not guarantee this, the camera was taken down to Police Headquarters. The film and camera were returned unopened and unprocessed March 30, 1971.

13. That at no time during the incident did the defendants Gunnarson and Lukovsky tell Dennis A. Anderson that the photography light was a source of interference with the police officers.

14. That on April 1, 1971, Gunnarson and Lukovsky appeared on a radio program called "Anthony Answers" on KDAL Radio in Duluth and their comments are recorded in the accompanying transcript.

The above facts are stipulated to by the parties. Certain remaining factual conflicts are being submitted through Affidavits.'

The affidavits add little to the stipulated facts except (1) plaintiff Anderson claims he was asked at one time to turn on his Sun Gun light to aid the police; (2) the police officers assert that too much light tended to interfere with and endanger the police activity, blinded them when removing the arrested men from the building, and made it easier for snipers, if any there might have been, to operate; (3) at the time of arrest the police officers did not know whether the arrestees were under 18 years of age and thus protected under Minn.Stat. § 260.161(3) which prevents photographing juveniles—though both arrestees ultimately turned out to be over 18 years of age and not covered by § 260.161(3). The transcript of the Radio program mentioned in paragraph 14 of the Stipulated Facts is furnished in affidavit form.

Plaintiffs allege that the seizure of the camera was wrongful; that the seizure and conditioned offers of release of the camera by defendants constituted a wrongful "prior restraint" under Near v. Minnesota, 283 U.S. 697, 51 S.Ct. 625, 75 L.Ed. 1357 (1931) and similar cases; that the comments of the police officers since the event, in the radio interview and in their affidavits, are threats of intention in the future to engage in similar activities, which threats have a "chilling effect" on the plaintiffs' exercise of their constitutionally protected rights of free speech and free press. Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965).

Based upon the above facts plaintiffs claim that an actual controversy requiring judicial declaration of rights exists between the parties on the issue of whether defendants violated plaintiffs' constitutional rights.

The basic response of defendants is that there is no existing case or controversy for two reasons: first, there was no prior restraint because the film was never reviewed and there is no threat of future review; second, the seizure and holding of the camera was an isolated incident, not shown to be part of a policy or pattern of activity of either defendants or other members of the police department. The lack of an existing case or controversy, it is argued, deprives this court of jurisdiction since federal courts cannot issue advisory opinions. United States Constitution, Art. III, § 2. Alabama State Fed. of Labor etc. v. McAdory, 325 U.S. 450, 461, 65 S.Ct. 1384, 89 L.Ed. 1725 (1945). Defendants also argue that their later comments over the Radio Station should be viewed as part of the original incident and there is, thus, no threat of future constitutional violations and no right to or need for the relief requested. Finally, it is contended that the difficulty or impossibility of framing an injunctive order or declaratory judgment in this case consistent with Rule 65(d) of the Fed.R.Civ.P., makes that relief requested inappropriate. The court is satisfied from all the facts and from reading the transcript of the Radio Station interview that there exists a case or controversy here and that the court has jurisdiction to render a declaratory judgment.

Plaintiffs contend, and defendants concede, that the seizure of the camera in this case was wrongful, and in violation of plaintiffs' rights under the Fourth and Fourteenth Amendments of the United States Constitution, because not made pursuant to a valid warrant or arrest. Also, despite defendants' argument, it is clear to this court that the seizure and holding of the camera and undeveloped film was an unlawful "prior restraint" whether or not the film was ever reviewed. Defendants concede that films are subject to the protection of the First Amendment. Joseph Burstyn, Inc. v. Wilson, 343 U.S. 495, 72 S.Ct. 777, 96 L.Ed. 1098 (1952); Schnell v. City of Chicago, 407 F.2d 1084 (7 Cir. 1969). Seizure of the camera and film is at least as effective a prior restraint—if not more so—as in New York Times v. United States, 403 U.S. 713, 91 S.Ct. 2140, 29 L.Ed.2d 822 (1971). Where an injunction against publication is sought, the publisher normally still has possession of—and therefore the ability to publish—the material sought to be enjoined from publication. Moreover, where an injunction is sought, the publisher has an opportunity to be heard, whereas a direct seizure such as at bar allows no such opportunity.

As stated in the *per curiam* decision in *New York Times, supra,* quoting Bantam Books, Inc. v. Sullivan, 372 U.S. 58, 70, 83 S.Ct. 631, 639, 9 L.Ed.2d 584 (1963):

> "*Any system of prior restraints* of expression comes to this Court bearing *a heavy presumption against* its constitutional validity. [Emphasis added]

If publication cannot be prevented indirectly by injunction after a hearing in a case involving the national security, *a fortiori,* the direct seizure and holding of a camera and film belonging to a newsman on any lesser ground is surely constitutionally invalid. Quantity of Copies of Books v. Kansas, 378 U.S. 205, 211, 84 S.Ct. 1723, 12 L.Ed.2d 809 (1964).

Defendant contends that offers of return of the seized objects were made immediately after seizure and that, therefore, any delay in return of the camera —the alleged prior restraint—was the fault of the plaintiffs and not a prior restraint by the police officer defendants. Such contention has no validity. The offers of return were clearly condi-

tioned on a prior review of the film by police authorities and a promise not to show such until approval. Plaintiffs had every right to refuse to accede to the demand for review prior to publication. If there are civil or criminal penalties for publication, the publishers and newsmen may of course incur such, but on the facts here present an unlawful prior restraint clearly occurred.

The claim of plaintiffs in effect to require a conference between news media and the Duluth police department may be disposed of summarily. Neither the police department, its detective bureau, the City of Duluth nor the defendants' superior officers, nor other members of the news media are parties to this lawsuit. The court therefore is without jurisdiction to declare any duty on the part of non-parties to take corrective action however desirable such might be.

■ As to plaintiffs' request for a declaration of the right of a newsman to be in an area where the general public is allowed, the public streets, sidewalks, etc., the parties agree on the relevant rules of law as stated in Gazette Publishing Co. v. Cox, Cause No. IP 65–C–528 (S.D.Ind. May 2, 1967).

"It is therefore ordered, decreed and declared by this Court that plaintiff, Gazette Publishing Co., Inc. its agents, employees, and servants, including plaintiff Jacqueline Gustin, have a constitutional right to have access to and to make use of the public streets, roads and highways in Randolph County, Indiana, for the purpose of observing and recording in writing and photographically the events which occur therein.

And that said plaintiffs, in so doing, have a constitutional right not to be interfered with by Defendant Kenneth S. (Jack) Cox, while performing his official duties as the Sheriff of Randolph County, Indiana, so long as said plaintiffs do not unreasonably obstruct or interfere with the defendant's official investigations of physical evidence or gain access to any place from which the general public is prohibited for essential safety purposes."

The stipulated facts clearly indicate that the general public was present and, in fact, an affidavit shows one member of the public was standing beside plaintiff Anderson. Defendants have made no claim before this court that Anderson was in an improper place and it seems clear that employees of the news media have a right to be in public places and on public property to gather information, photographically or otherwise.

■■ Plaintiffs' right to use a light in the taking of photographs at night should not be restricted except, and unless and until so ordered to the contrary by police in their reasonable belief that such is interfering with or endangering them in their work. So the police or firemen may restrict the use of the streets for reasons of public safety during a fire or other emergency and need not brook unreasonable interference with official investigation of physical evidence or the carrying out of other duties. Such restrictions should apply to members of the news media as well as to the public generally. Dayton Newspapers Inc. v. Starich, 345 F.2d 677 (6th Cir. 1965). There was no evidence of such interference by plaintiff Anderson here. The light was turned off within five seconds of a request therefor. There was no restriction of the general public from the area and the court finds no such unlawful interference, recognizing however that had there been, defendants would be justified in calling for a cessation of activities.