TYCO LABORATORIES, INC., et al., Plaintiffs,

v.

Michael Joseph CONNELLY, et al., Defendants.

No. CA 79–0265–T.

United States District Court,
D. Massachusetts.

July 12, 1979.

Goodwin, Procter & Hoar, Brockett Denniston, III, Sam Hoar, Jr., Boston, Mass., for plaintiffs.

Herrick & Smith, H. Lawrence Tafe, III, Gerald F. Rath, Boston, Mass., Donald K. Stern, Garrick F. Cole, Carl Valvo, Asst. Attys. Gen., Boston, Mass., for defendants.

Robert J. Bernstein, Fried, Frank, Harris, Shriver & Jacobson, New York City, Virginia F. Crisman, Fried, Frank, Harris, Shriver & Kampelman, Washington, D. C., for Ludlow.

## MEMORANDUM AND ORDER

TAURO, District Judge.

At issue is whether this challenge to the constitutionality of the Massachusetts Takeover Act[1] (Act) has been mooted by plaintiff's post-trial disclaimer of any further interest in making a tender offer for shares of Ludlow.[2]

### I.

On February 9, 1979 Tyco Laboratories, Inc.[3] (Tyco) announced its intention to make a $19 cash offer for all shares of Ludlow Corporation[4] (Ludlow) on the condition that such offer would not be subject to the restrictions of the Act. Contemporaneously, Tyco filed this action seeking declaratory and injunctive relief on the grounds that the Act violated the supremacy and commerce clauses of the United States Constitution[5] and was preempted by the Securities Exchange Act.[6] Named as defendants were certain officers of the Commonwealth of Massachusetts[7] (the state defendants) as well as Ludlow.

The Act regulates tender offers made for the stock of companies that are incorporated in the Commonwealth, or have their principal place of business here. It is undisputed that, questions of constitutionality aside, the terms of the Act would apply to the proposed tender offer announced by Tyco on February 9, 1979 and that non-compliance with the Act would expose Tyco to possible civil liability and criminal prosecution.[8]

---

1. Mass.Gen. Laws ch. 110C § 1 *et seq.*

2. Tyco's statement of disinterest was made following a trial of nine days during which expert testimony, pro and con, was offered concerning preemption and commerce clause challenges to the constitutionality of the Massachusetts Take-Over statute. Those testifying included: Professor Louis Loss, Harvard Law School; A. A. Summer, former Commissioner of the Securities Exchange Commission; Professor Robert H. Smiley, Cornell University; James Tomlinson Hill, III, First Boston Company; Frederick W. McCarthy, Drexel, Burnham & Lambert; Joseph S. Gaziano, President of Tyco Laboratories, Inc.; Austin B. Mason, President of Ludlow Corporation; William Chatlos, Georgeson & Company; Professor Lawrence Tribe, Harvard Law School; Professor Donald Schwartz, Georgetown Law School; Francis Wheat, former Commissioner of the Securities Exchange Commission.

3. The proposed tender offer was actually announced by Tyco and its wholly owned subsidiary AMBG Corp., both of which are Massachusetts corporations. The distinction between the two entities is not significant to this memorandum and they will be referred to collectively as Tyco.

4. Ludlow is also a Massachusetts corporation.

5. Art. VI cl. 2 and Art. I sec. 8 cl. 3, respectively.

6. In particular the Williams Act, which consists of the 1968 amendments to the Securities Exchange Act, 15 U.S.C. §§ 78m(d) and (e) and 78n(d)–(f).

7. Michael Joseph Connelly, the Secretary of the Commonwealth; Raymond W. Cocchi, the director of the securities division office of the Secretary of the Commonwealth; and Francis X. Bellotti, Attorney General.

8. Section 9 of the Act states in pertinent part:
   (a) Any offeror who purchases a security in connection with a takeover offer in violation of this chapter shall be liable to the person selling the security to him who may sue either in law or in equity. In an action for rescission the seller shall be entitled to recover the security, plus any income received by the purchaser thereon, upon tender of the consideration received . . . . Damages are the excess of either the value of the security on the date of purchase or its present value, whichever is greater, over the present value of the consideration received for the security.
   (f) . . . . Any person who violates section two or any rule thereunder, or any order of which he has notice, or who willfully violates section seven or any rule or order thereunder, may be fined not more than five thousand dollars or imprisoned not more than three years or both. Each of the acts specified shall constitute a separate offense and a prosecution or conviction for any one of such offenses shall not bar prosecution or conviction for any other offense. . . .

At the outset of this litigation, during the hearing on plaintiff's motion for a temporary restraining order, this court expressed concern as to whether the facts alleged presented an actual controversy ripe for adjudication. At that point in time, Tyco had only stated an intention to make a tender offer for Ludlow shares and, therefore, was not subject to any sanctions under the Act. On the basis of representations made by Tyco's counsel, an affidavit of Tyco's president, and the allegations in the complaint, the court concluded that only concern as to the applicability of the Act's sanctions caused Tyco to hold back on making an unconditional tender offer.[9] The Attorney General, representing the state defendants, made clear that the Commonwealth intended to defend the Act and enforce its provisions. This court concluded that, under the circumstances, it would be inequitable to require Tyco to become a defendant in a criminal case in order to attack the Act's constitutionality. *See Lake Carriers' Ass'n v. MacMullan,* 406 U.S. 498, 508, 92 S.Ct. 1749, 32 L.Ed.2d 257 (1972). Consequently, this court determined that an actual controversy existed, affording jurisdiction to review the substantive issues raised by Tyco's complaint.

Tyco's request for a temporary restraining order was denied. An evidentiary hearing on Tyco's motion for a preliminary injunction began on March 13, 1979 and continued for nine days. At its conclusion, all parties agreed that the hearing could be treated as a consolidated proceeding both for preliminary relief and on the merits. The parties submitted extensive Requests for Findings of Fact and Conclusions of Law, post trial briefs, and reply briefs, the last of which was filed on April 30, 1979.

## II.

On March 12, 1979, just prior to the first day of trial, Ludlow announced its intent to purchase for $25 million the Flexible Packaging Division of the Continental Group (Continental). The purchase price was the equivalent of some 43% of Ludlow's net worth, according to its December 30, 1978 financial statements. On April 23, 1979, Ludlow issued a shareholder letter announcing the completion of this acquisition. A special shareholders' meeting was convened on April 25, 1979 to discuss, among other matters, the details of that purchase.[10]

On May 3, 1979, Tyco issued the following press release:

Tyco Laboratories, Inc. (NYSE) announced today that it has decided not to proceed with its previously announced proposed tender offer for any and all shares of common stock of Ludlow Corporation for cash at a price of $19 per share. Tyco stated that its decision was reached after further consideration of the purchase by Ludlow Corporation of the Flexible Packaging Division of the Continental Group for approximately $25 million in cash.

A Suggestion of Mootness was filed with this court by Tyco on the same day.

On May 4, 1979, the court conferred with all parties to consider the status of this case in view of these developments. Briefs were filed by the parties and the issue was taken under advisement on May 23, 1979.

Both Tyco and Ludlow agree that this court no longer has jurisdiction to render a decision.[11] The state defendants disagree, taking the position that the court may and should decide the issues tried and briefed in the underlying litigation. The state defendants assert that, although Tyco no longer seeks injunctive relief, the issue as to the Act's constitutionality remains a matter of controversy.

■ A review of the state defendants' contention must begin with an under-

---

9. Nothing that has transpired since has caused this court to doubt the truthfulness and integrity of these representations when made.

10. On several occasions during the course of the trial, the court was called upon to settle discovery disputes concerning Tyco's requests

to see the financial analysis of the Flexible Packaging Division prepared by Continental.

11. These parties do differ as to the manner in which this action should be laid to rest. That matter will be discussed below, *infra.*

standing that, "[t]he requirements for a justiciable controversy are no less strict in a declaratory judgment proceeding than in any other suit." *Federation of Labor v. McAdory*, 325 U.S. 450, 461, 65 S.Ct. 1384, 1389, 89 L.Ed. 1725 (1945).[12] Thus, unless the state defendants can demonstrate the existence of a present controversy requiring the court's judgment, rather than an abstract dispute over whether a statute is constitutional, this court must conclude that Art. III of the United States Constitution mandates dismissal for want of subject matter jurisdiction.

In support of their position the state defendants cite two antitrust cases, *U.S. v. W.T. Grant Co.*, 345 U.S. 629, 73 S.Ct. 894, 97 L.Ed. 1303 (1953); *U. S. v. Trans-Missouri Freight Association*, 166 U.S. 290, 17 S.Ct. 540, 41 L.Ed. 1007 (1897). Both of these cases were initiated by the government and in both cases the defendant had discontinued the complained of activity prior to the Supreme Court's review. In each of these cases, however, it was determined that "[a] controversy remained to be settled . . . , e. g., a dispute over the legality of the challenged practices." *W.T. Grant Co.* 345 U.S. at 632, 73 S.Ct. at 897 (citations omitted).

█ Those cases are inapposite to the question now before this court. Here, there is no allegation that Tyco has engaged in any illegal activities. Indeed, this litigation was initiated by Tyco, not the state authorities, because of Tyco's concern that a tender offer *might* violate the Act. Given the present posture of this case, the state defendants are actually seeking an advisory ruling to the effect that had Tyco made a tender offer, it would have been required to do so in compliance with the terms of the Act—clearly an abstract, hypothetical and contingent proposition. *See Federation of Labor, supra*, 325 U.S. at 461, 65 S.Ct. 1384.

Contrary to the state defendants' contention, nothing has occurred as a result of this litigation to impugn the validity of the Act. Tyco's request for a temporary restraining order was denied. The Act remains in full force and effect until a court of competent jurisdiction determines it is unconstitutional or the legislature amends or repeals it.

Similarly inapposite is *Super Tire Engineering v. McCorkle*, 416 U.S. 115, 94 S.Ct. 1694, 40 L.Ed.2d 1 (1974). There, the plaintiff who was seeking to have a state statute held unconstitutional, could demonstrate that, although the immediate crisis given rise to the litigation had ended,

> the challenged governmental activity in the present case is not contingent, has not evaporated or disappeared, and, by its continuing and brooding presence, casts what may well be a substantial adverse effect on the interests of the petitioning parties.

*Id.* at 122, 94 S.Ct. at 1698. In the instant case, however, Tyco has come before the court and stated that it no longer wishes to make a tender offer for the shares of Ludlow. Tyco, therefore, faces no adverse effects from continued enforcement of the Act and no longer wishes to litigate the issue of its validity.[13]

█ The fact that the parties may have a lingering academic difference of view as to the Act's constitutionality is not a substitute for the case and controversy predicate necessary to confer jurisdiction on this court. There being no jurisdiction, this court is required to issue an order of dismissal. As shall be discussed below, however, the unique circumstances of this case warrants such dismissal to be without prejudice as to any party.

### III.

█ A genuine case and controversy did exist during the period in which this case

---

12. This court also is mindful that it should "not pass upon a constitutional question although properly presented by the record, if there is also present some other ground upon which the case may be disposed of." *Ashwander v. Tennessee Valley Authority*, 297 U.S. 288, 347, 56 S.Ct. 466, 483, 80 L.Ed. 688 (1936) (concurring opinion).

13. Of course Tyco could not continue this litigation even if it wished to do so under the present posture of this case. *See* jurisdictional discussion under Section I, *supra*.

was tried, briefed, and submitted for decision. The factual issues were thoroughly and carefully addressed by the parties. Their briefs were extensive and scholarly. As counsel for Tyco stated when the parties were last before the court, Tyco cannot guarantee that it will never again contemplate making a tender offer for the shares of Ludlow.[14] In other words, the issues already tried and briefed may once again become ripe for adjudication. In the interests of judicial efficiency and economy, therefore, any party to this litigation may petition the court to vacate its order of dismissal and, in essence, reactivate this case in its present posture upon a showing of an appropriate change in circumstances. If this case is reactivated, the parties and the court will have the full benefit of the enormous effort and expense already expended, particularly with respect to the production of expert testimony.[15]

### IV.

■ Ludlow has requested that costs be imposed on Tyco, since Tyco initiated this extensive and obviously expensive litigation and has now reversed its intention to purchase shares of Ludlow so as to moot the controversy. Had Tyco's reversal of position been totally unilateral, in the sense that it was not at least arguably prompted by any change of circumstance beyond its control, the court would give serious consideration to Ludlow's request. Tyco's ostensible reason for losing interest in a tender offer was Ludlow's $25 million dollar acquisition of Continental's Flexible Packaging Division. The court is certainly cognizant of Tyco's persistent efforts during the course of this litigation to acquire information concerning the details of that purchase. Ludlow and Continental were at least as persistent in their efforts to protect the confidentiality of that information. Under

these circumstances, there is no basis for this court to determine that Tyco's change of heart was anything other than an exercise of business judgment based on available information. Ludlow's request for imposition of costs is therefore denied.

---

14. As the result of a successful tender offer made by Tyco, not subject to the Act, Tyco is now Ludlow's largest common shareholder. That circumstance would made the future difficult to predict.

15. The court notes that having found that it no longer has jurisdiction over this suit it obvious-

ly may not exercise the type of "continuing jurisdiction" requested by Tyco and Ludlow. The court does believe that specifically allowing the parties to petition the court to vacate its order of dismissal upon a showing of changed circumstances will have the same practical effect.