863 F.2d 50
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
James Marcus TINGLE, Plaintiff-Appellant,
v.
STATE OF TENNESSEE D.H.S., Marguerite W. Sallee, Larry
Butler, Hilton Bolton, Saundra Richardson, and
Juanita Ely, Defendants-Appellees.
 No. 88-5035.
 United States Court of Appeals, Sixth Circuit.
 Dec. 6, 1988.
 
 Before KENNEDY, BOYCE F. MARTIN, Jr., and ALAN E. NORRIS, Circuit Judges.
 PER CURIAM.
 
 
 1
 James Marcus Tingle appeals an adverse judgment dismissing his challenge to the constitutionality of the Tennessee Child Sexual Abuse Act, and the granting of qualified immunity to two employees of the State of Tennessee. We hold that Tingle waived his constitutional challenge to the emergency procedures of the Tennessee Child Sexual Abuse Act because he failed to object to the magistrate's recommendation that the procedures be found constitutional. We affirm the district court's ruling that Tingle's challenge to the Act's non-emergency procedures was premature. Moreover, we find that the two employees were properly granted qualified immunity.
 
 
 2
 The pertinent facts of this case are as follows. James Marcus Tingle became Executive Director of the Morristown-Hamblen Day Care Centers, Inc. in September, 1981. The Tennessee Department of Human Services funds approximately 60 percent of the budget of the Morristown-Hamblen Day Care Center.
 
 
 3
 In February, 1986, the Department of Human Services received a report of child sexual abuse involving Tingle and a child at the center. The Department of Human Services investigated this allegation pursuant to the Tennessee Child Sexual Abuse Act, Tenn.Code Ann. Sec. 37-1-601 et seq. During this investigation Tingle took a leave of absence from the center.
 
 
 4
 At the inception of this investigation Juanita Ely, a social counselor for the Department of Human Services, told Tingle's wife that if she did not separate Tingle from her children by a prior marriage, the Department of Human Services would seek a court order removing the children from her custody. Tingle then withdrew from any contact with the children. Ely was named as a defendant in this action.
 
 
 5
 On February 28, 1986, Saundra Richardson, a supervisor for the Child Protective Services Division of the Department, told Tingle's wife that if she allowed Tingle to sit with the children during church services, the Department would have the children removed from her. After a hearing held before a juvenile court judge on March 17, 1986, Tingle was allowed to move back into his house with his wife and the children. Richardson was also named as a defendant in this action.
 
 
 6
 The Department of Human Services completed its investigation of the allegation against Tingle in June, 1986. The Department of Human Services concluded that the report that Tingle had abused a child at the center was "indicated" and that he posed a threat to the health and safety of children at Morristown-Hamblen Day Care Center. This conclusion was essentially based on two pieces of evidence. The first was a video tape in which Matthew Perry, the child who was allegedly abused, named Tingle as the perpetrator of sexual acts against him. The second was a psychological evaluation of Tingle in which the examining psychologist concluded that Tingle exhibited a personality profile which made him more inclined to engage in sexual acts with children.
 
 
 7
 Tingle was also informed of the Department's conclusion by a letter dated June 25, 1986. Tingle was informed that he had a right to a hearing to contest the Department's determination and he was told how to request such a hearing. The Department subsequently informed Morristown-Hamblen Day Care Center that it could not reinstate Tingle because his name had been placed on a Child Abuse Register as an alleged child abuser, pursuant to Tenn.Code Ann. Sec. 37-1-605.
 
 
 8
 After Morristown-Hamblen Day Care Center terminated Tingle, he brought this suit in federal court under 42 U.S.C. Sec. 1983 seeking declaratory, injunctive and monetary relief. Tingle alleged that the Act violated his Sixth and Fourteenth Amendment rights by establishing a statewide child abuse registery and by listing his name in the registery.
 
 
 9
 The district court found and we agree that the charges against Tingle were properly heard under the procedures established by the Tennessee Child Sexual Abuse Act. Under the Act each report of child sexual abuse is investigated by a "child protective team." Each team is coordinated by the Department but is composed of a variety of state officials. See Tenn.Code Ann. Sec. 37-1-607. When it receives a report of alleged child sexual abuse, a team conducts an investigation to determine whether the report should be classified as "unfounded" or as "indicated."
 
 
 10
 Under the Tenn.Code Ann. Sec. 27-1-605(d), the Department is also empowered to maintain a central child sexual abuse registry, with names of victims and alleged perpetrators. If a report is classified as "unfounded" all information concerning it is expunged from the registry. If the report is classified as "indicated" the information is maintained. See Tenn.Code Ann. Sec. 37-1-605(d)(3). Chapter 1240-7-3-.01 of the Department of Human Service's Public Necessity Rules provides a variety of factors upon which a classification of "indicated" can be founded.
 
 
 11
 An individual identified as the perpetrator of sexual child abuse in an "indicated" report may appeal the classification of the report through one of two ways, depending upon his or her status. If the individual does not have access to children by virtue of employment or volunteer work with a child welfare agency, or by virtue of a contractual arrangement with such an agency to provide foster home care, or by contractual arrangement with an institutional or residential child care facility, then the individual has a number of levels of review available. Information from the registry concerning the individual may not be released until administrative review is exhausted or waived. Chapter 1240-7-3 provides for an informal file review by the Commissioner of the Department or his or her designee. If the classification of "indicated" is upheld in this review, the individual has the right to a full administrative hearing before a hearing officer of the Administrative Proceedure Division of the Department. If the classification is upheld by the hearing officer, the Department issues a final order. Judicial review is still available, however, the Department may now release information concerning the individual from the registry to "qualified people," e.g. prospective employers.
 
 
 12
 If the alleged perpetrator does have access to children by virtue of employment or volunteer work with a child welfare agency, or by a contractual arrangement to provide foster home care for an agency, or by a contractual arrangement with an institutional or residential child care facility, then a different review process applies. In such a situation the "emergency notification" procedures of Rule 1240-7-3-.08 apply. Under these procedures the Department of Human Service conducts an ex parte file review as soon as possible after the "indicated" classification. This review determines whether the report was properly classified as "indicated" and whether an immediate threat exists to a child's health, safety or welfare. If no threat is found then the perpetrator has a right to an administrative hearing. No information will be released from the registry until this review process has been exhausted or waived, at which time the Department issues a final order. If an immediate threat is found then written notice is sent to the alleged perpetrator and the child welfare agency with whom he or she is involved. The individual then has a right to an administrative hearing and judicial review.
 
 
 13
 Under appropriate procedures the district court referred Tingle's suit to a federal magistrate. The magistrate filed a report and list of recommendations. The magistrate recommended that the "emergency notification" procedures be found constitutional under the balancing test provided in Matthews v. Eldridge, 424 U.S. 319, 335 (1976). The district court adopted this recommendation because Tingle failed to file a timely objection. The district court also agreed with the magistrate's recommendation that the state's interest in preventing sexual abuse of children outweighed Tingle's interest in family solidarity and personal reputation. Because Tingle failed to object to the magistrate's recommendation and the district court adopted that recommendation, Tingle may not now argue this point. In Thomas v. Arn, 474 U.S. 140 (1985) the Court upheld a rule that the failure to file timely objections to a magistrate's report waives the right to appeal the district court adoption of the report. We agree with the district court that the "emergency notification" procedures of the Tennessee statute complied with the demands of due process.
 
 
 14
 The magistrate discussed at length and in great detail why the non-emergency procedures of the Act should be declared unconstitutional. The district court correctly found that Tingle's challenge to the non-emergency procedures was premature because he had "not suffered an injury in fact by application" of them. The court found that this challenge presented no justiciable case or controversy under Doe v. Ullman, 367 U.S. 497 (1961) and Alabama State Federation of Labor v. McAdary, 325 U.S. 450 (1945). The court also found that under Socialist Labor Party v. Galligan, 406 U.S. 538 (1972), review of the Act's non-emergency procedures was not ripe under the facts of this case.
 
 
 15
 We agree. Because Tingle's case was disposed of under the "emergency notification" procedures, determination of the constitutionality of the non-emergency procedures is not necessary for resolution of this case. We avoid the unnecessary decision of constitutional questions, if it is appropriate. F.C.C. v. Pacifica Foundation, 438 U.S. 726 (1978). The constitutionality of these procedures is not now before us.
 
 
 16
 Finally, the district court concluded that Ely and Richardson were entitled to qualified immunity under Harlow v. Fitzgerald, 457 U.S. 800 (1982). It is reasonable to conclude that Ely and Richardson acted within the scope of their official discretion, as required by Harlow, since enforcement of the Act requires considerable discretionary action. Moreover, in light of the circumstances surrounding the case, Ely and Richardson reasonably believed their actions were appropriate and they acted in good faith. Hall v. U.S., 704 F.2d 246, 249 (6th Cir.1983) cert. denied, 464 U.S. 1002 (1983).
 
 
 17
 For all the reasons stated above the district court's judgment is affirmed.