ON APPLICATION FOR REHEARING
The original opinion in this case is withdrawn and the following opinion is substituted therefor. This is an appeal by Kailah M. Martin, through her guardian ad litem, from a determination by the probate court that Raymond Martin, the deceased, was not her father and, therefore, that Kailah was not entitled to any exemptions from his estate.[1] In contending that Raymond was her father, Kailah also claimed her proportional rights to any recovery resulting from a pending wrongful death suit. She argues that any determination of parentage by the probate court would affect her alleged rights to those benefits. Furthermore, she cites §§ 12-15-30 and 12-15-1(7), Code of Alabama (1975), as support for her contentions that the probate court does not have jurisdiction to determine the issue of paternity and that that issue should be considered by the juvenile division of the district court or the circuit court.
The following facts are pertinent to an understanding of the basis of this litigation.
Raymond V. Martin, the deceased, married Johnnie Walker on March 12, 1982. In April 1982, Johnnie Martin learned that she was pregnant, and Kailah M. Martin was born to her on December 25, 1982. Prior to Kailah's birth, however, Raymond and Johnnie separated and Raymond filed for divorce pursuant to §30-2-1(a)(10), Code of Alabama (1975), alleging that Johnnie had become pregnant prior to the marriage and without his agency. Raymond's argument that he was not Kailah's father was supported by a laboratory test done in November 1982, to determine whether his semen contained any sperm. The test results revealed no live or dead sperm and was evidence that a vasectomy performed in 1974 had been successful. The divorce was granted on February 25, 1983.
Despite the laboratory results, when Kailah was born, Raymond was listed as her father on her birth certificate. She was also named as his child on his insurance papers. During the divorce proceedings, however, Johnnie admitted to having had sexual relations with another man "on at least one occasion" during the month prior to her wedding. The parties agreed that Raymond was not Kailah's father, and the divorce was granted pursuant to that agreement. No guardian ad litem represented the minor child during the divorce, and it was determined by the court that Raymond would have no visitation rights, and would have no obligation to support the child.
On September 12, 1986, Raymond was killed in an automobile accident. Upon the probate of his will on September 29, 1986, it was discovered that he had bequeathed his estate to Amy Martin, his child from a previous marriage. A claim was filed on behalf of Kailah on February 18, 1987, contending that Raymond was her father and that she, therefore, was entitled to any statutory exemptions, as well as any potential wrongful death benefits recovered as a result of Raymond's death.[2]
First, we will address the divorce judgment and its impact on the issues raised in this appeal. The divorce was granted pursuant to § 30-2-1(a)(10), Code of Alabama (1975), which states as follows:
 "(a) The circuit court has power to divorce persons from the bonds of matrimony, upon a complaint filed by one of *Page 3 
the parties, entitled 'In re the marriage of __________ and __________,' for the causes following:
" . . . .
 "(10) In favor of the husband, when the wife was pregnant at the time of the marriage, without his knowledge or agency."
There is no question that the divorce judgment operated to dissolve the marriage of Raymond and Johnnie Martin. In addition, that judgment settled their rights vis-a-vis one another. The issue, however, is whether that determination prevented Kailah Martin from later claiming that Raymond was, in fact, her father. We hold that it does not. We also conclude that the divorce judgment did not destroy the usual presumption in a paternity case that a child born to a married woman is the child of the mother's husband.
Although not exactly on point, we consider our holding inEx parte Snow, 508 So.2d 266 (Ala. 1987), to be very persuasive on the issues presently before this Court. In Snow, the issue was
 "whether a child [could] bring an action for paternity under the Alabama Uniform Parentage Act, Code 1975, §§ 26-17-1 through -21, when the child's mother had brought an unsuccessful paternity action against the same defendant pursuant to the prior paternity statute, Code 1975, §§ 26-12-1 through -9 (repealed May 7, 1984)."
508 So.2d at 266. In that case, an unsuccessful paternity action instituted by the minor's mother pursuant to the deGraffenreid Act (§§ 26-12-1 through -9 (repealed May 7, 1984)), did not bar the minor from later raising the same issue pursuant to the Alabama Uniform Parentage Act ("AUPA") (§§26-17-1 through -21, Code of Alabama (1975)), which was enacted in 1984. Id. at 267. As in the present case, the child was born prior to the enactment of the AUPA and the previous proceeding was likewise pre-AUPA. However, with the enactment of the AUPA, "the class of persons entitled to bring an action to determine the father and child relationship [was expanded], and for the first time [it authorized] such an action by the child. See Code 1975 § 26-17-6." Id. Surely, if we allowed the minor inSnow to re-litigate the exact issue litigated by her mother in a previous lawsuit, then we should permit Kailah Martin to litigate the issue of her paternity, which was not even the central issue of the divorce action. At the time of their divorce, Raymond and Johnnie could have prevented the possibility that Kailah might later raise the issue of her paternity by joining her as a party to the divorce. Then, she would have been represented by a guardian ad litem and any determination of paternity would have been binding upon her as well as upon the Martins.
 "In contrast to enforcement of a child's right of a present or past support obligation, the establishment of the parent-child relationship is the most fundamental right a child possesses to be equated in importance with personal liberty and the most basic of constitutional rights. To hold a child bound prospectively by a finding of nonpaternity in a divorce action in which the child was not a party would be to allow the conduct of the mother to foreclose the most fundamental right a child possesses in our system of jurisprudence."
Ruddock v. Ohls, 91 Cal.App.3d 271, 154 Cal.Rptr. 87, 91
(1979). We agree, and we hold, therefore, that the divorce judgment is not binding on Kailah, because she was not joined as a party or represented by a guardian ad litem.
Because Kailah is entitled to litigate the issue of paternity, we also are of the opinion that she is entitled to the presumption that a child born to a married woman is the child of her husband. In reaching this conclusion, we must look at § 30-2-12, Code of Alabama (1975), which states that "[w]hen a divorce is granted the husband for the pregnancy of the wife at the time of the marriage, the issue is thereby bastardized." We note that this statute expressly deals with the relationship between the minor child and the mother's husband. However, the action which allegedly bastardized Kailah Martin did not afford to her an opportunity to prove that *Page 4 
Raymond was indeed her father. Time and time again this Court has stated as follows:
 "It is a long-standing rule of the common law, and one frequently recognized in this state, that a child born to a married woman is presumed to be the legitimate offspring of her husband. Carnegie v. Carnegie, 261 Ala. 146, 73 So.2d 556
(1954); Sims v. Birden, 197 Ala. 690, 73 So. 379
(1916)."
Leonard v. Leonard, 360 So.2d 710, 712 (Ala. 1978). In making that statement, we are of the opinion that a proceeding to which the child is not a party should not be able to do away with the presumption of paternity generally afforded children in Kailah's situation. But, the divorce judgment clearly went further than merely doing away with the presumption of paternity. In fact, as stated above, § 30-2-12, states that the divorce judgment bastardized Kailah. This determination was made with no means for Kailah to defend against or contest it. Because any other result would violate fundamental principles of fairness and due process, we hold that because Kailah was not represented by a guardian ad litem, nor given an opportunity to prove that Raymond was her father, the statute §30-2-12 is unconstitutional as it applies to Kailah Martin. She was born approximately nine and one-half months after the marriage. This time period clearly entitled her to the presumption that Raymond was indeed her father, and the statute, therefore, was improperly applied as to her. We declare that the statute will prospectively be considered unconstitutional as applied to any child who is not represented by a guardian ad litem at the divorce proceeding. Thus, the presumption of paternity (i.e., that a child born during her mother's marriage is presumed to be a child of the mother's husband) has not been altered.
Finally, we will consider whether the determination that Kailah was not Raymond's daughter was made in the proper forum. We are of the opinion that it was not and, therefore, the case must be reversed and remanded for a hearing in the juvenile or family division of the district or circuit court.
The Uniform Parentage Act states as follows:
 "(a) The causes of action provided by this chapter shall be brought in the juvenile or family court division of the district or circuit court and wherever used in this chapter the word 'court' shall mean the juvenile or family court division of the district or circuit court . . . . " (Emphasis added.)
Clearly, the case before us falls within the purview of the Uniform Parentage Act. The question, however, is whether the probate court, in the context of handling the estate of Raymond Martin, should have considered Kailah's claims or should have transferred them to the juvenile division or family division of the district or circuit court for a determination thereof.
The administrator cites § 43-8-48, Code of Alabama (1975), in support of the argument that the probate court did not err by holding the paternity hearing. However, that section deals with intestate succession and is restricted to adopted children and children born out of wedlock. We are of the opinion that the distinguishing difference between Kailah and an adopted child or child born out of wedlock is that Kailah, unlike the others, is entitled the presumption that she is Raymond's daughter. Therefore, not only does this case not deal with intestate succession, but it also includes a strong presumption of paternity, and we are of the opinion that any finding contrary to the presumed paternity should be made by the court most adept at making that determination. The rebuttal of the presumption of paternity is a serious matter for all those who are involved and, for that reason, the juvenile division or family division of the district or circuit court should be the forum in which such an issue is resolved.
The judgment of the probate court is hereby reversed and the cause is remanded.
ORIGINAL OPINION WITHDRAWN; OPINION SUBSTITUTED; APPLICATION OVERRULED; 87-637, PETITION *Page 5 
DISMISSED AS MOOT; 87-694, REVERSED AND REMANDED.
HORNSBY, C.J., and MADDOX, JONES, SHORES, HOUSTON, STEAGALL and KENNEDY, JJ., concur.
[1] At the time of this appeal, plaintiff also filed a petition for writ of mandamus with this Court. Because of the disposition of the issues raised on appeal, the issues raised in the petition for writ of mandamus are moot.
[2] In this appeal, Kailah Martin does not dispute the fact that the will bequeathed everything to Amy Martin. Because the will was written subsequent to her birth, she makes no claim as an omitted child. See § 43-8-91, Code of Alabama (1975).