720 So.2d 497 (1998)
In re ANONYMOUS, a minor.
(In re In the Matter of ANONYMOUS, a minor).
1971860.
Supreme Court of Alabama.
August 3, 1998.
*498 PER CURIAM.
This case involves an order of a trial court granting a 17-year-old minor's petition for a waiver of parental consent to have an abortion, pursuant to the provisions of §§ 26-21-1 to -8, Ala.Code 1975 (commonly referred to as "Parental Consent Statute"). The trial court appointed a guardian ad litem to represent the interests of the fetus at the hearing of the case; the guardian appealed to the Court of Civil Appeals, seeking review of the trial court's decision.
The Court of Civil Appeals held that the guardian ad litem had no statutory right to appeal the trial court's order, in that the right to appeal was limited to cases in which a minor's request to have an abortion without obtaining parental consent had been denied. The Court of Civil Appeals dismissed the appeal. In the Matter of Anonymous, 720 So.2d 497 (Ala.Civ.App.1998). The guardian ad litem timely petitioned this Court to review the judgment of the Court of Civil Appeal dismissing the appeal; a complete record of the proceeding was filed in this Court, and the parties have briefed the issues raised.[1]
After considering the opinion of the Court of Civil Appeals, the petitioner's brief; the briefs filed by the guardian ad litem appointed for the minor; and the brief filed by the attorney general, we affirm the judgment of the Court of Civil Appeals dismissing the appeal and holding that the guardian ad litem could not seek a review of the trial court's order.

Facts
For a better understanding of the reasons why we hold that the Court of Civil Appeals properly dismissed the guardian ad litem's appeal, we set out the basic facts involved in *499 this case. On July 6, 1998, a minor, age 17, and seven- to nine-weeks pregnant, sought an order from the trial court authorizing her to obtain an abortion without getting parental consent. Relying on Rule 17(c) of the Alabama Rules of Civil Procedure,[2] the trial court appointed a guardian ad litem to represent the interests of the fetus. The trial court also appointed a guardian ad litem to represent the interests of the minor. After conducting a hearing, at which evidence was presented both by the minor, acting by and through her guardian ad litem, and by the guardian ad litem appointed to represent the fetus, the trial court granted the waiver of parental consent.
The guardian ad litem appointed to represent the fetus appealed to the Court of Civil Appeals. That court, after citing and quoting § 26-21-4(h), Ala.Code 1975,[3] held that "[b]ecause the right of appeal is purely statutory, strict compliance with the statute authorizing the appeal is required." 720 So.2d at 497. That court concluded, in part, as follows:
"The legislature did not provide a right to appeal from the granting of a petition for waiver of parental consent. The statute specifically states that an appeal may lie for any `minor' to whom the court `denies' the petition. This specific wording does not leave room for judicial interpretation. In this case no minor was denied a waiver. Therefore, there is no right to appeal.
"Because there is no statutory authority for this appeal, we have no choice but to dismiss it."
720 So.2d at 497 (emphasis original).
The guardian ad litem for the fetus, within three days after the entry of that order, petitioned this Court to review that decision, and the complete record was subsequently filed. The guardian has raised three legal issues:
(1) "[D]oes a guardian ad litem, duly appointed by the Court to represent the unborn child, have a right to appeal the [trial] court's decision adverse to his (or her) life interest, which may ultimately result in the involuntary death of the unborn child[?]"
(2) "[D]oes an unborn child, otherwise healthy at 8-10 weeks of gestation (if not further developed) have a life interest to be protected against abortion by the guardian ad litem, if not the juvenile court itself[?]
(3) "[I]s Section 26-21-4 of the Code of Alabama 1975, as amended, unconstitutional because it deprives [custodial parents] of due process of law in that it permits the court to take away [their] right to rear their child without any notice[?]"
Pet. brief at 1-2. Because this petition raised a question whether the Parental Consent Statute was constitutional, the guardian served proper notice on the attorney general.

I.
We granted the petition for the writ of certiorari, and we first consider whether the Court of Civil Appeals erred in dismissing the appeal. Having reviewed the briefs submitted by the parties, we affirm the judgment of the Court of Civil Appeals.
Based upon well-established Alabama caselaw, reaffirmed by this Court on July 31, 1998, we must presume that in 1987, when it enacted Ala.Code 1975, § 26-21-1 et seq. (the Parental Consent Statute), the Alabama Legislature knew the limit of its constitutional authority. See Abbott Laboratories v. Durrett, [Ms. 1960464, July 31, 1998], ___ So.2d ___ (Ala.1998), citing Siegelman v. Chase Manhattan Bank (USA), N.A., 575 So.2d 1041 (Ala.1991); Ex parte Dixie Tool & Die Co., 537 So.2d 923 (Ala.1988); Ex parte Louisville & N.R.R., 398 So.2d 291 (Ala.1981); and Ellis v. Pope, 709 So.2d 1161 (Ala.1997). The Legislature, as the Court of Civil Appeals correctly noted, did not provide a right to appeal from an order granting a petition for a waiver of parental consent. We can conclude only that the Legislature understood its subordinance to the Supremacy *500 Clause of the United States Constitution and that it recognized that, pursuant to the United States Supreme Court's decision in Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), it could not constitutionally confer upon a nonviable fetus the right to appeal, through a guardian ad litem, an order granting a minor's request to have an abortion. See, also, Planned Parenthood of Central Missouri v. Danforth, 428 U.S. 52, 96 S.Ct. 2831, 49 L.Ed.2d 788 (1976); Bellotti v. Baird, 443 U.S. 622, 99 S.Ct. 3035, 61 L.Ed.2d 797 (1979); City of Akron v. Akron Center for Reproductive Health, Inc., 462 U.S. 416, 103 S.Ct. 2481, 76 L.Ed.2d 687 (1983), overruled, Planned Parenthood of Southeastern Pennsylvania v. Casey, 505 U.S. 833, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992); Planned Parenthood Ass'n of Kansas City, Mo., Inc. v. Ashcroft, 462 U.S. 476, 103 S.Ct. 2517, 76 L.Ed.2d 733 (1983). (Each of these decisions dealt with the matter of parental consent for a minor seeking an abortion and predated the adoption of the 1987 Parental Consent Statute.)

II.
We now address the guardian ad litem's argument that § 26-21-4, Ala.Code 1975, unconstitutionally deprives custodial parents of due process of law by permitting a court to take away, without any notice, the custodial parents' right to rear their minor child. Although we recognize that the Legislature specifically stated that in enacting the statute it was intending to foster "the family structure," to preserve the family "as a viable social unit," and to protect "the rights of parents to rear children who are members of their household," § 26-21-1(a), we do not believe the statute unconstitutionally denies custodial parents due process of law. See Alabama State Federation of Labor v. McAdory, 246 Ala. 1, 9-10, 18 So.2d 810, 814-15 (1944), cert. dismissed, 325 U.S. 450, 65 S.Ct. 1384, 89 L.Ed. 1725 (1945).

III.
We last address the ultimate question  whether the trial court erred in granting the minor's request for a waiver of parental consent.
The record shows that the trial judge conducted an adversarial hearing and gave both the guardian ad litem appointed for the minor and the guardian ad litem appointed for the fetus the opportunity to present evidence and to argue their respective positions. Based on our reading of that record, and considering the law that the trial judge and this Court must apply, we conclude that the guardian ad litem has not shown that the trial court erred; therefore, the judgment of the trial court is due to be affirmed.
AFFIRMED.
ALMON, SHORES, HOUSTON, and KENNEDY, JJ., concur.
COOK, J., concurs in the result.
HOOPER, C.J., and MADDOX, SEE, and LYONS, JJ., concur specially in part and dissent in part.
HOOPER, Chief Justice, and MADDOX, SEE, and LYONS, Justices (concurring specially in part and dissenting in part).
The per curiam opinion, after granting the petition for certiorari review, holds that the Court of Civil Appeals properly dismissed the appeal filed by the guardian ad litem appointed to represent the unborn child. We disagree with that holding. We address not only that issue but each of the issues presented to this Court by the parties, including whether the trial court erred in appointing a guardian ad litem to represent the unborn child.

I.
We first address the question whether the trial court had the authority to appoint a guardian ad litem for the unborn child.
The Court of Civil Appeals, in dismissing the appeal, determined that the guardian ad litem appointed to represent the unborn child, even if the appointment of that guardian was authorized, could not appeal. The Court of Civil Appeals did not address the issue whether the trial court could appoint a guardian ad litem for the unborn child, but based its judgment solely upon its interpretation of the Parental Consent Statute: that *501 the Legislature had granted the right of appeal only to a minor who has been denied a waiver of the requirement of parental consent. We cannot agree with the Court of Civil Appeals' narrow interpretation of its appellate jurisdiction. We recognize that the present proceedings are largely controlled by the Parental Consent Statute, which was adopted to recognize in the State a compelling interest in regard to the protection of immature minors who lack the ability to make fully informed choices about abortion, and we also recognize that the Parental Consent Statute provides no specific authorization for the trial court to appoint a guardian ad litem for an unborn child. Nevertheless, we believe that the provisions of Rule 17(c), Ala.R.Civ.P., especially when construed in the manner prescribed by Rule 1, authorized the trial judge to make the appointment. Accord §§ 12-12-11 and -34, Ala.Code 1975. The fact that an unborn child has many legal rights is of ancient origin.[4]
Rule 17(c) has historically been applied to protect property interests of those yet unborn, and very often those not yet conceived, and it is applicable in divorce proceedings. See Ex parte Martin, 565 So.2d 1 (Ala.1989), recognizing the necessity for the appointment of a guardian ad litem for an unborn child of a pregnant woman in statutory proceedings governing a divorce that could lead to a determination that the unborn child was illegitimate. In Martin, this Court held that § 30-2-12, Ala.Code 1975, providing that a divorce granted on the basis that at the time of the marriage the wife was pregnant by a man other than the husband bastardized the child, was unconstitutional when applied to hold the later-born child illegitimate, unless the unborn child was represented by a guardian ad litem in the divorce proceeding. Id. at 4. In Martin, Justice Adams, joined by seven Justices, with one Justice not voting, wrote:
"[A] proceeding to which the child is not a party should not be able to do away with *502 the presumption of paternity generally afforded children in [this child's] situation. But, the divorce judgment clearly went further than merely doing away with the presumption of paternity. In fact, as stated above, § 30-2-12 states that the divorce judgment bastardized [the child]. This determination was made with no means for [the child] to defend against it or contest it. Because any other result would violate fundamental principles of fairness and due process, we hold that because [the child] was not represented by a guardian ad litem, nor given an opportunity to prove that R. was her father, § 30-2-12 is unconstitutional as it applies to [this child]. She was born approximately nine and onehalf months after the marriage. This time period clearly entitled her to the presumption that R. was indeed her father, and the statute, therefore, was improperly applied as to her. We declare that the statute will prospectively be considered unconstitutional as applied to any child who is not represented by a guardian ad litem at the divorce proceeding."
565 So.2d at 4 (emphasis original).
If a guardian ad litem is required for an unborn child when its legitimacy is at stake, then, a fortiori, it would appear that the appointment of a guardian ad litem, although not specifically provided for in the Parental Consent Statute, would be at least authorized, if not required, in a case such as this one, involving a minor who is seeking a waiver of parental consent to have an abortion.[5]
It is well settled that a guardian ad litem appointed to protect the interests of the unborn has a right to appeal. See, e.g., Motley v. Calhoun, 521 So.2d 28 (Ala.1988). Although the general rule is that, in proceedings based upon a statutory remedy, the statute governs matters of procedure, an exception applies when the statute is silent, as the Parental Consent Statute is. In that event the Rules of Civil procedure fill the void, pursuant to Rule 81(a)(32). Peseau v. Civil Service Bd. of Tuscaloosa County, 401 So.2d 79 (Ala.Civ.App.), cert. denied, 401 So.2d 82 (Ala.1981).
In considering the issues presented in this case, we find it very helpful to look to the intent of the Legislature in adopting the Parental Consent Statute. The legislative intent and purpose are stated in § 26-21-1:
"26-21-1 Legislative purpose and findings.
"(a) It is the intent of the legislature in enacting this parental consent provision to further the important and compelling state interests of: (1) protecting minors against their own immaturity, (2) fostering the family structure and preserving it as a viable social unit, and (3) protecting the rights of parents to rear children who are members of their household.
"(b) The legislature finds as fact that: (1) immature minors often lack the ability to make fully informed choices that take account of both immediate and long-range consequences, (2) the medical, emotional and psychological consequences of abortion are serious and can be lasting, particularly when the patient is immature, (3) the capacity to become pregnant and the capacity for mature judgment concerning the wisdom of an abortion are not necessarily related, (4) parents ordinarily possess information essential to a physician's exercise of his best medical judgment concerning the child, and (5) parents who are aware that their minor daughter has had an abortion may better insure that she receives adequate medical attention after her abortion. The legislature further finds that parental consultation is usually desirable and in the best interests of the minor."
In view of this stated legislative intent and purpose, it seems clear that the Legislature intended, in adopting the Parental Consent Statute, to preserve the life of the unborn, and that it deliberately was doing what it could within the constraints of the Federal Constitution, as interpreted by the Supreme *503 Court of the United States, to accomplish that purpose.
To accomplish its goals of protecting the life of the unborn, the Legislature required the appointment of a guardian ad litem for a minor who seeks a waiver of parental consent, and, although the statute does not specifically require the appointment of a guardian ad litem for the unborn child, it appears to us that this Court, in the Martin case, involving substantially similar questions regarding the rights of an unborn child, not only authorized the appointment of a guardian ad litem for the unborn child but stated that it was necessary to guarantee due process of law. The general rule of law is that guardians ad litem are desirable in many proceedings to ensure that the proceedings will have the adversariness necessary for the full presentation of the issues, and in the proceedings now here for review such an appointment would be consistent with the purpose and intent of the Legislature in adopting the Parental Consent Statute. In another setting, several years ago, this Court addressed the value and necessity for adversariness in judicial proceedings, holding that when a court has before it no "adversary parties," it can issue no judgment or decree. Dickinson v. Jordan, 210 Ala. 602, 98 So. 886 (1924).

II.
We now consider whether a guardian ad litem appointed for the unborn child can appeal a trial judge's order granting a minor a waiver of parental consent. The answer to this admittedly close question of procedure depends on whether § 26-21-4(h), providing a right of appeal to any minor to whom the court denies a waiver of parental consent, was intended to prohibit any other party to a proceeding under the Parental Consent Statute, such as a guardian ad litem, from seeking a review of an order granting a waiver of parental consent. The Court of Civil Appeals held that it was. We think otherwise.
This Court has applied the maxim expressio unius est exclusio alterius "as an aid to construction" in cases in which, "in the natural association of ideas, that which is expressed is so set over by way of contrast to that which is omitted that the contrast enforces the affirmative inference that that which is omitted must be intended to have opposite and contrary treatment." Weill v. State ex rel. Gaillard, 250 Ala. 328, 334, 34 So.2d 132, 137 (1948). However, Rule 81(a)(32) requires the application of a different standard construing omissions from statutes. See, State v. Washburn, 349 So.2d 20, 22 (Ala.1977), dealing with impeachment proceedings governed by statutes. The applicable statutes dealt with the testimony of witnesses in such proceedings by stating only that witnesses were "entitled to the same fees ... as witnesses in civil cases"; the statutes were "otherwise silent regarding discovery procedures." 349 So.2d at 22. Therefore, this Court held, Rule 81 "supplies otherwise nonexistent procedures for the conduct of [the] proceedings" and makes applicable the Rules of Civil Procedure, including the rules for discovery. Id.
Based on the foregoing, we conclude that the Legislature, when it provided the minor a right to appeal, did not intend to prohibit a guardian ad litem appointed to represent the interest of an unborn child from appealing from an adverse order.[6] Stated differently, we do not believe that the Legislature, by failing specifically to provide in the Parental Consent Statute for a guardian ad litem's right to appeal, intended, by omission, to defeat such a right of appeal.

III.
The per curiam opinion addresses the argument made by the guardian ad litem on behalf of the unborn child that § 26-21-4, Ala.Code 1975, unconstitutionally deprives custodial parents of due process of law by permitting a court to take away, without notice, the custodial parents' right to rear their minor child, and concludes that the Parental Consent Statute does not unconstitutionally deny the custodial parents due process of law. We concur with that holding. See Alabama State Federation of Labor v. McAdory, 246 Ala. 1, 9-10, 18 So.2d 810, *504 814-15 (1944), cert. dismissed, 325 U.S. 450, 65 S.Ct. 1384, 89 L.Ed. 1725 (1945).

IV.
We now address the question whether the trial court erred in granting the minor's request for a waiver of parental consent.
We agree with the per curiam opinion that the trial judge conducted an adversarial hearing and gave both the guardian ad litem appointed for the minor and the guardian ad litem appointed for the unborn child the opportunity to present evidence and to argue their respective positions. Based on our reading of that record, and considering the law that the trial judge and this Court must apply, we agree with the per curiam opinion that the guardian ad litem has not shown the judgment of the trial court is erroneous; therefore, the judgment of the trial court is due to be affirmed.
We do note that the trial judge, although stating in his order that he "[did] not condone abortion," felt that he was nevertheless "confined to the issue of waiver of parental consent pursuant to § 26-21-4." He, therefore, granted the waiver.
We would further note that we have reviewed the record, and we find that the guardian ad litem for the unborn child, on very short notice, quite effectively presented substantial evidence that would weigh against a decision to terminate a pregnancy simply for the convenience of the mother. Likewise, the guardian ad litem strenuously argued in the trial court, and argues here, that the trial judge should not have granted the minor's request for a waiver of parental consent.

Conclusion
The issues presented in this case are the subject of debate across this State and across the Nation, and the fact that we agree with the per curiam opinion that the trial court did not err in granting the waiver should not be construed or understood as expressing our personal views on whether abortion is right or wrong, whether the decisions of the United States Supreme Court that govern us in this area are sound, or whether those decisions will be modified or overruled in the future. We would also hasten to add that nothing in the per curiam decision or in our special writing would prevent the minor, whom the trial judge has determined to be mature, from changing her mind and allowing some parental involvement, which, the Legislature has found, "is usually desirable and in the best interests of the minor."
NOTES
[1] See § 26-21-4(h), Ala.Code 1975, and the Temporary Rules Governing Procedures for Petitions by an Unemancipated Minor Requesting Waiver of Parental Consent for the Performance of an Abortion. Those Rules provide, in part, that "[t]he Supreme Court shall have five days [computed pursuant to Rule 6(a), Alabama Rules of Civil Procedure,] from the filing of the completed record on appeal from the Court of Civil Appeals, the filing of the petition for review, or oral argument, whichever is later, to render and file a written order or issue an opinion." Rule 15. The guardian ad litem's petition was filed in this Court on July 24, 1998, and the completed record was filed in this Court on July 27.
[2] Rule 17(c) provides that "[w]hen the interest of an infant unborn or unconceived is before the court, the court may appoint a guardian ad litem for such interest."
[3] Section 26-21-4(h) provides that "[a]n expedited confidential and anonymous appeal shall be available to any minor to whom the court denies a waiver of consent."
[4] "An infant ... in the mother's womb, is supposed in law to be born for many purposes. It is capable of having a legacy ... [i]t may have a guardian assigned to it, and it is enabled to have an estate limited to its use...." 1 W. Blackstone, Commentaries *130.

More recently, some courts and commentators have determined that it is inappropriate to appoint a guardian ad litem to represent the interests of the unborn child when the pregnant woman is seeking to have an abortion. However, as one commentator on the question notes, as a result of recent medical and scientific advances, physicians and courts have recognized in other contexts that an unborn child has identifiable interests and that those interests may be adverse to the interests of the pregnant woman, and some courts have approved the appointment of guardians ad litem in other contexts. See, e.g., Susan Goldberg, Of Gametes and Guardians: The Impropriety of Appointing Guardians Ad Litem for Fetuses and Embryos, 66 Wash. L.Rev. 503 (1991), for a discussion of these developments in the law as it relates to fetuses and embryos.
Professor Goldberg, in her article, although stating that she opposed the appointment of guardians ad litem, nevertheless recognized that some courts have appointed guardians ad litem in cases involving forced medical treatment, and that guardians ad litem have been appointed to represent fetuses in prosecutions of drug-abusing pregnant women under state criminal and childabuse provisions. See, also, the following commentaries on the question of the legal status of fetuses and the appointment of guardians ad litem for fetuses: Glaze, Combating Prenatal Substance Abuse: The State's Current Approach and the Novel Approach of Court-Ordered Protective Custody of the Fetus, 80 Marq. L.Rev. 793 (1997); Morris, Technology and the Legal Discourse of Fetal Autonomy, 8 U.C.L.A. Women's L.J. 47 (1997); Best, Fetal Equality? The Equality State's Response to the Challenge of Protecting Unborn Children, 32 Land & Water L.Rev. 193 (1997); Romney, Prosecuting Mothers of Drugexposed Babies: The State's Interest in Protecting the Rights of a Fetus Versus the Mother's Constitutional Rights to Due Process, Privacy and Equal Protection, 17 J. Contemp. L. 325 (1991); Lee, State ex rel. Angela M.W. v. Kruzicki: The Wisconsin Court of Appeals Introduces a Dangerous New Weapon in the Battle Over "Fetal Rights," 30 Ga. L.Rev. 1183 (1996); Misner, What if Mary Sue Wanted an Abortion Instead? The Effect of Davis v. Davis on Abortion Rights, 3 Am. U.J. Gender & L. 265 (1995); Hartsoe, Person or ThingIn Search Of The Legal Status Of A Fetus: A Survey Of North Carolina Law, 17 Campbell L.Rev. 169 (1995); Flannery, Court-Ordered Prenatal Intervention: A Final Means to the Gestational Substance Abuse, 30 J. Fam. L. 519 (1991/92); Axelrod, Whose Womb is it Anyway: Are Paternal Rights Alive and Well Despite Danforth?, 11 Cardozo L.Rev. 685 (1990); Dargatz, Legal Representation of a Fetus: The Mother and Child Disunion?, 18 Cap. U.L.Rev. 591 (1989); Rickhoff and Cukjati, Protecting the Fetus from Maternal Drug and Alcohol Abuse: A Proposal for Texas, 21 St. Mary's L.J. 259 (1989); Balisy, Maternal Substance Abuse: The Need to Provide Legal Protection for the Fetus, 60 S. Cal. L.Rev. 1209 (1987).
[5] See generally Planned Parenthood of Southeastern Pennsylvania v. Casey, 505 U.S. 833, 874, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992) ("The fact that a law which serves a valid purpose, one not designed to strike at the right itself, has the incidental effect of making it more difficult or more expensive to procure an abortion cannot be enough to invalidate it.").
[6] See Rule 28(A)(1)(a), (2)(b), Ala.R.Juv.P.; §§ 12-12-34 and -72, Ala.Code 1975.