STUART, Justice.
 

 On February 17, 2010, the Disciplinary Board of the Alabama State Bar, Panel III (“the Board”), ordered that Douglas H. Cooner be disbarred from the practice of law in the State of Alabama. The order of disbarment states:
 

 “I.
 

 “PROCEDURAL HISTORY
 

 “Formal charges in this matter have been pending since March 31, 2004. The case was previously set on January
 
 *31
 
 15, 2008, but continued at the request of Mr. Cooner without objection.
 

 “On October 20, 2009, an Order was entered setting the case for January 26, 2010. On January 22, 2010 the Alabama State Bar received a letter from Mr. Cooner dated January 14, 2010, in which he states in part that he ... “will not be in a position to attend a scheduled meeting in Montgomery on January 26, 2010,’ citing a conflict with immigration hearings in Atlanta set for the same day. Attached to his report was a ‘Request for Applicant to Appear for Initial Interview’ dated December 16, 2009. No explanation was provided why Mr. Cooner waited almost one month to draft his request for a continuance or why it took eight days for the Bar to receive the same.
 

 “The Bar filed an opposition to the request on January 25, 2010, and by Order dated the same day Mr. Cooner’s request for a continuance was denied. ...
 

 [[Image here]]
 

 “II.
 

 “THE HEARING
 

 “This case involves violations of various Rules of the Ala. R. Prof. Cond., in connection with Mr. Cooner’s dealings with his uncle, William B. Riley, most notably his preparation of an Irrevocable Trust in which Mr. Cooner was appointed as Trustee, his acts as Trustee and the conveyance of certain real property.
 

 “The Panel heard testimony by telephone from Mildred C. Battles. Ms. Battles lives in Evans, Georgia, is ninety (90) years old and was unable to attend due to some physical difficulties. William B. Riley (hereinafter referred to as Mr. Riley) was her sister’s husband. Mr. Cooner is her nephew, as he is the son of her brother.
 

 “She knew that Alan Furr was Mr. Riley’s lawyer. Ms. Battles was hot aware of Mr. Cooner visiting Mr. Riley or his wife prior to her death but after-wards he ‘came around.’
 

 “After Mr. Riley’s wife died, Mr. Cooner started taking care of Mr. Riley’s finances and initially Mr. Riley was glad that Mr. Cooner was helping. Ms. Battles knows that Mr. Riley asked Mr. Cooner to provide him information about his property and money. She also knows that Mr. Cooner took Mr. Riley’s house keys and would not let him in his home.
 

 “Ms. Battles also is aware that Mr. Cooner sold Mr. Riley’s house and property but she does not know what he did with the proceeds.
 

 “Eventually, Mr. Riley got so frustrated with Mr. Cooner’s failure to provide him with information that he went to see Alan Furr, another lawyer. Ms. Battles went with Mr. Riley to see Mr. Furr and Mr. Riley specifically requested Mr. Furr to find out what happened to his money. Mr. Riley was very clear that he desired Mr. Furr to be his lawyer.
 

 “Ms. Battles explained that she filed a complaint with the Bar and that unfortunately Mr. Cooner ‘is the biggest liar God ever created.’
 

 “The Panel next heard from Alan Furr, who in 1997 was practicing in the Grayson Valley area of Birmingham. At that time, he prepared Wills for Mr. and Mrs. Riley, explaining they were typical spouse to spouse Wills. When Mrs. Riley died in 1998, Mr. Furr prepared a new Will. In the Will he prepared, Mr. Riley’s estate was left to Sylvia Hancock and his church; however, no bequest was made to Mr. Cooner.
 

 
 *32
 
 “In October or November of 2001, Mr. Riley, accompanied by Ms. Battles and Linda Gable, met with Mr. Furr. Mr. Furr related Mr. Riley informed him that Mr. Cooner had prepared a Will and Trust and he had been requesting information from Mr. Cooner about his assets, his automobile and his house. He was frustrated as he received no response from Mr. Cooner.
 

 “Mr. Furr identified as Bar Exhibit 1 a document entitled ‘William B. Riley Irrevocable Living Trust’ dated May 11, 2000. In the Trust, Mr. Cooner was listed as a beneficiary of the Trust’s residuary assets. (See V(B)(13)). Under the section of the Trust entitled ‘Trustee’s Powers,’ the following provision was included:
 

 “‘C. Standard of Care. To acquire, invest, reinvest, exchange, retain, sell, and manage Estate and Trust assets, exercising the judgment and “fiduciary” care, under the circumstances then prevailing, that persons of prudence, discretion and intelligence exercise in the management of their own affairs, not in regard to speculation but in regard to the permanent disposition of their funds, considering the probable income as well as the probable safety of their capital ... ’ (See Paragraph VI(C)).
 

 “The Trust also included a provision entitled ‘Management of Trust Assets’ which compelled the Trustee to manage and distribute the assets for the benefits of [Mr. Riley’s] health, maintenance and welfare. (See Paragraph III).
 

 “Finally, Mr. Riley is designated in the Trust as both the ‘Grantor’ or ‘Beneficiary’ and the Trust contains a provision requiring the Trustee to provide an accounting on at least an annual basis. (See Paragraph VII(D)).
 

 “Mr. Furr identified a warranty deed dated May 19, 2000, wherein Mr. Riley conveyed a parcel of real estate to the Trust. (See Bar Exhibit 2). Mr. Furr also identified a Bill of Sale dated May 19, 2000, wherein Mr. Riley conveyed his automobile to the trust. (See Bar Exhibit 3).
 

 “As a result of their meeting, Mr. Furr advised Mr. Riley to send a written request to Mr. Cooner for an accounting, which was done by letter dated November 13, 2001. (See Bar Exhibit 4). According to Mr. Furr, Mr. Cooner never responded.
 

 “Mr. Furr conducted a title search and discovered the following:
 

 “(a) A Warranty Deed conveying real estate to Mr. Riley dated June 18, 2001 (See Bar Exhibit 5).
 

 “(b) A mortgage of the same date between Mr. Riley and Mortgage Edge Corporation. (See Bar Exhibit 6).
 

 “(c) A Special Power of Attorney dated April 25, 2001, wherein Mr. Riley allegedly gives authority to Mr. Cooner to purchase the above referenced real estate. (See Bar Exhibit 7).
 

 “(d) A Warranty Deed from Mr. Riley to Mr. Cooner conveying the same real estate dated July 22, 2001. (See Bar Exhibit 22). (Hereinafter ‘Woodberry Lane residence’).
 

 “Mr. Furr met with Mr. Riley again in December 2001. Mr. Riley was not aware of the conveyances described above and did not recall signing the Power of Attorney. Mr. Furr identified as Bar Exhibit 8 a handwriting sample he submitted to Ferrell Shiver, who he identified as a handwriting expert, who orally told him that the Power of Attorney was not signed by Mr. Riley.
 

 
 *33
 
 “Mr. Furr explained that while Mr. Riley was residing at an assisted living facility, he was aware of his surroundings, asked specific questions, was conversant and, in his opinion, competent.
 

 “Mr. Riley engaged Mr. Furr to represent him (See Bar Exhibit 9) and, as a result, Mr. Furr sent a letter to Mr. Cooner dated December 17, 2001, demanding an accounting of the Trust and copies of all documents pertaining to the real estate transaction described above. (See Bar Exhibit 10). Receiving no response, Mr. Furr filed suit against Mr. Cooner on behalf of Mr. Riley in the Jefferson County Circuit Court on February 20, 2002. (See Bar Exhibit 11). Additionally, Mr. Riley executed a revocation of Power of Attorney dated February 19, 2002. (See Bar Exhibit 12). Thereafter, Mr. Cooner, on behalf of himself and Mr. Riley, filed suit against Mr. Furr and his law firm, that lawsuit being filed in the Jefferson County Circuit Court on March 13, 2002. Because of the obvious dilemma, i.e., Mr. Furr representing Mr. Riley, yet Mr. Riley filing suit against him, Mr. Furr contacted the Alabama State Bar. Mr. Furr asked whether he could even speak to Mr. Riley. Mr. Furr was told that he could contact Mr. Riley because his representation had not been terminated. Mr. Furr received information from Mr. Riley’s niece, Linda Gable, through his assistant, that Mr. Riley wanted him to continue to be his lawyer and that he had not authorized the lawsuit filed by Mr. Cooner.
 

 “Mr. Cooner finally provided what he called an accounting in connection with the litigation wherein he was the defendant. (See Bar Exhibit 19). According to Mr. Furr, he did not consider the submission a true accounting because there was very little in the way of backup documents or data to support the entries. It appeared to Mr. Furr that based on the accounting, there was Thirty-Eight Thousand Thirty-Two Dollars and 09/100 ($38,032.09) not accounted for.
 

 “The litigation against Mr. Cooner was eventually settled. The settlement revealed that the Woodberry Lane residence was purchased for One Hundred Thirty-Five Thousand and 00/100 Dollars ($135,000.00) and a mortgage in the amount of One Hundred Eight Thousand and 00/1000 Dollars ($108,000.00) was provided as collateral. The amount of Twenty-Nine Thousand Nine Hundred Ninety-One and 73/100 Dollars ($29,991.73) was paid from Mr. Riley’s trust as a down payment. According to Mr. Furr, those funds came from Mr. Riley’s own security account. (See Bar Exhibit 24, cashier’s check for the amount stated and Bar Exhibit 23, the closing statement).
 

 “The Settlement Agreement provided, among other things, that Mr. Cooner make payment to the Trust in the amount of Ten Thousand and 00/100 Dollars ($10,000.00), that he be removed as Trustee, that he be removed from any Certificates of Deposit, that he furnish the successor Trustee, Ms. Gable, all documents in connection with the Trust, that he satisfy the existing mortgage on the Woodberry Lane residence, that he convey that property to Ms. Gable as successor Trustee, that he surrender the automobile and that he submit an itemization of the personal property of Mr. Riley, which was contained at his residence, which was presently stored in the basement of Mr. Cooner’s residence. (See Bar Exhibit 14).
 

 “Mr. Furr also informed the Panel that Mr. Cooner filed a Chapter 13 bankruptcy (See Bar Exhibit 25) on January 5, 2000, which was near the time of
 
 *34
 
 the Woodberry Lane [residence] transaction. He also explained that Mr. Cooner tried to set aside the Settlement Agreement; however, those efforts were rejected by Judge Ed Ramsey.
 
 [2]
 
 (See Bar Exhibit 15).
 

 “Finally, Mr. Furr testified that the lawsuit brought against him and his law firm was settled on payment of costs.
 

 “Leslie Barineau was appointed Guardian ad Litem in March 2003, as by that time Mr. Riley was no longer competent. Her charge was to protect his interests and determine if there was any misappropriation from the Trust. Ms. Barineau explained she had a difficult time obtaining an accounting or information from Mr. Cooner and a difficult time receiving any documentation such as receipts, bills, etc., to support the alleged expenditures from the Trust.
 

 “She identified the previously discussed accounting but stated it was not complete. . She testified there were some questionable transactions — for example, expenditures for allegedly extensive damage to Mr. Riley’s home, which was vacant, without providing any backup documentation. She also questioned why the home was never rented. She questioned expenditures for gasoline for someone who was residing in an assisted living facility or for car maintenance. She questioned disbursements to Ms. Hancock, who never had the account which was- listed on the accounting. She questioned expenditures for Direct TV because Mr. Riley did not have this service at the assisted living facility and also questioned many cash transactions. When she requested explanations by Mr. Cooner for these questionable transactions, he refused to provide an explanation or documentation.
 

 “Obviously, the Woodberry Lane [residence] transaction bypassed the Trust but trust funds were used to purchase the residence and the accounting does not show the repayment of Twenty-Nine Thousand Nine Hundred Ninety-One and 73/100 Dollars ($29,991.73) by Mr. Cooner to the Trust.
 

 “It also appeared to Ms. Barineau that Mr. Cooner was using trust funds to pay for the defense of the case brought by Mr. Riley.
 

 “Pursuant to questioning by Mr. Davis, Ms. Barineau agreed there were questionable transactions involving deposits and withdrawals. For example, there were instances where a specific amount of money was deposited into the Trust and on the same day there would be withdrawals with no explanation of who withdrew the funds or what they were to be used for. (See e.g. page 40 and 46 of Bar Exhibit 19).
 

 “The Panel considered a provision in the Settlement Agreement wherein it was stated it appeared ány breach of the Trust was unintentional, and, due in part, to poor record keeping and it did not appear the Trustee misappropriated any funds with the intent to defraud. It was explained by Mr. Furr this provision was insisted upon by Mr. Cooner’s attorney in order to settle the case and he felt it was in the best interest of Mr. Riley, as did Ms. Barineau, for the matter to be settled. That said, it is the Panel’s opinion that these statements do not prevent the Panel from fully considering the evidence presented nor [do they] provide any preclusive effect.
 

 “The Panel also compared closely the handwriting which was verified to be that of Mr. Riley (See Bar Exhibits 8 and 12) with the Special Power of Attorney (See Exhibit 7) and concludes unanimously that the latter signature is not that of Mr. Riley.
 

 
 *35
 
 “Finally, the Panel fully reviewed and considered the motions to dismiss filed by Mr. Cooner along with the many exhibits attached.
 

 “HI.
 

 “DECISION
 

 “Upon consideration, evaluation and analysis of the testimony and exhibits, the Panel unanimously believes there is clear and convincing evidence to establish Mr. Cooner’s guilt of violating Rule 1.7(b) [‘[a] lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer’s responsibilities to another client or to a third person, or by the lawyer’s own interests’], 1.8(c) [‘[a] lawyer shall not prepare an instrument giving the lawyer or a person related to the lawyer as parent, child, sibling, or spouse any substantial gift from a client, including a testamentary gift, except where the client is related to the donee’], 8.4(c) [‘[i]t is professional misconduct for a lawyer to ... engage in conduct involving dishonesty, fraud, deceit or misrepresentation’], and 8.4(g) [‘[i]t is professional misconduct for a lawyer to ... engage in any other conduct that adversely reflects on his fitness to practice law'] of the Alabama Rules of Professional Conduct, which are Charges IV [charging Mr. Cooner with representing Mr. Riley when the representation of Mr. Riley was materially limited by Mr. Cooner’s own interests in violation of Rule 1.7(b)], V [charging Mr. Cooner with preparing an instrument giving himself a substantial gift from Mr. Riley in violation of Rule 1.8(c) ], IX [charging Mr. Cooner with violating or attempting to violate the Alabama Rules of Professional Conduct, and/or knowingly assisting or inducing another to do so and/or did so through the acts of another in violation of Rule 8.4(a) ], [
 
 1
 
 ] X [charging Mr. Cooner with engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation in violation of Rule 8.4(c) ], and XI [charging Mr. Cooner with engaging in conduct that adversely reflected on his fitness to practice law in violation of Rule 8.4(g)] of the Bar’s complaint. The Panel further finds that Mr. Cooner is not guilty of violating Rule 1.2(a), 1.4(a), 1.4(b), 1.15(a), l:15(b) and 1.16(d) of the Alabama Rules of Professional Conduct, which are Charges I, II, III, VI, VII, and VIII of the Bar’s complaint.
 

 “In order to adjudge the appropriate disciplinary sanction, the Panel has considered those factors constituting aggravation as set out in the standards, to include standards 4.11, 4.31 and 5.11(b), and in addition makes the following findings:
 

 “A. Prior disciplinary offenses— None.
 

 “B. Dishonest or selfish motive— Yes.
 

 “C. A pattern of misconduct — Yes, as evidenced by the Woodberry Lane [residence] transaction and Trust expenditures.
 

 “D. Multiple offenses — See above.
 

 “E. Bad faith obstruction of the disciplinary proceedings by intentionally failing to comply with Rules or Orders of the-disciplinary agency; — Yes.
 

 “F. Submission of false evidence, false statements or other deceptive practices during the disciplinary process— Yes.
 

 
 *36
 
 “G. Refusal to acknowledge wrongful nature of conduct — Yes.
 

 “H. Vulnerability of victim — Yes.
 

 “I. Substantial experience in the practice of law — No.
 

 “J. Indifference to making restitution — Yes.
 

 “IV.
 

 “[MITIGATING CIRCUMSTANCES
 
 ]
 

 “The Panel has considered the following mitigating circumstances:
 

 “A. Absence of prior disciplinary record — Yes.
 

 “B. Absence of dishonest or selfish motive — No.
 

 “C. Personal or emotional problems — No.
 

 “D. Timely good faith effort to make restitution or to rectify consequences of misconduct — No.
 

 “E. Full and free disclosure to disciplinary board or cooperative attitude towards proceedings — No.
 

 “F. Inexperience in the practice of law — Yes.
 

 “G. Character or reputation — No evidence presented.
 

 “H. Physical or mental disability or impairment — Unknown.
 

 “I. Delay in disciplinary proceedings — Yes.
 

 “J. Interim rehabilitation — No.
 

 “K. Imposition of other penalties or discipline — No.
 

 “M. Remoteness of prior offenses— Not applicable.
 

 ‘V.
 

 “CONCLUSION
 

 “The Panel has carefully considered what the appropriate punishment should be. While certainly not unmindful of the severity of disbarment, the Panel unanimously came to the conclusion that the totality of Mr. Cooner’s conduct merits disbarment. Safeguarding and accounting for funds belonging to third parties is an integral and essential duty of a lawyer and responsibility of the legal profession. Self-dealing or utilizing funds not belonging to a lawyer for selfish purposes and taking advantage of an elderly and vulnerable person erodes and eviscerates the public’s confidence in and the honor and integrity of the legal profession, thereby warranting the most severe consequence. When that foundational trust is violated for the selfish purposes of a lawyer, confidence in the integrity and honor of the legal profession demands the most severe consequence.
 

 “Based upon all of the foregoing, it is the judgment of the Disciplinary Board, Panel III, as follows:
 

 “1. Mr. Cooner is disbarred from the practice of law in the State of Alabama.
 

 “In addition, Mr. Cooner shall be assessed for all costs, including, but not necessarily limited to, cost of publication of public notices incidental to these proceedings and this hearing; and, an administrative fee in the amount of Seven Hundred Fifty Dollars ($750.00) is assessed against Mr. Cooner in accordance with Rule 38(d)(9) of the Alabama Rules of Disciplinary Procedure.
 

 “All Panel members concur.
 

 [[Image here]]
 

 
 *37
 
 Cooner moved for a new trial or, in the alternative, to open the judgment. After requiring the State Bar to, respond, the Board summarily denied Cooner’s motion. Cooner appeals.
 

 Standard of Review
 

 “The standard of review applicable to an appeal from an order of the Disciplinary Board is ‘that the order will be affirmed unless it is not supported by clear and convincing evidence or misapplies the law to the facts.’
 
 Noojin v. Alabama State Bar,
 
 577 So.2d 420, 423 (Ala.1990), citing
 
 Hunt v. Disciplinary Board of the Alabama State Bar,
 
 381 So.2d 52 (Ala.1980).”
 

 Davis v. Alabama State Bar,
 
 676 So.2d 306, 308 (Ala.1996).
 

 Discussion
 

 Before this Court can address the substantive issues raised on appeal, we must first determine whether . Cooner’s appeal was timely.
 

 On February 17, 2010, the Board filed with the disciplinary clerk of the Alabama State Bar its order disbarring Cooner, in accordance with Rule 4.2(b)(6)(B), Ala. R. Disc. P. On March 3, 2010, 14 days after the Board’s order was filed, Cooner filed a motion for a new trial or, in the alternative, to open the judgment, pursuant to Rule 3(b), Ala. R. Disc. P., and Rule 59, Ala. R. Civ. P. On March 5, 2010, the Board ordered the State Bar to file a response. On March 17, 2010,.the State Bar responded, arguing that the filing of a motion for a new trial was not proper in a lawyer-disciplinary proceeding. The State Bar also argued the merits of the motion. On March 30, 2010, the Board summarily denied Cooner’s motion for a new trial or, in the alternative, to open the judgment. Cooner filed his notice of appeal in this Court on April 8, 2010.
 

 The State Bar contends that Cooner’s appeal should be dismissed because, it says, the appeal was not timely filed. Specifically, the State. Bar argues that the Alabama Rules of Disciplinary Procedure adequately set forth the procedures to be followed in a disciplinary proceeding and because those Rules are silent with regard to a post-disciplinary-prOceeding motion, the filing and consideration of a post-disei-plinary-proceeding motion are not proper. The State Bar maintains that post-disciplinary-proceeding motions have no field of operation in lawyer-disciplinary proceedings; therefore, it argues, Cooner’s filing of his motion for a new trial or, in the alternative, to open the judgment did not toll the time for filing his appeal. Cooner contends that his filing of a post-disciplinary-proceeding motion was proper pursuant to Rule 3(b), Ala. R. Disc. P., and Rule 59, Ala. R. Civ. P., and that, therefore, because he filed his notice of appeal within 14 days of the denial of his post-disciplinary-proceeding motion, his notice of appeal was timely filed.
 

 The Alabama Rules of Disciplinary Procedure do not address the filing and consideration of post-disciplinary-proceeding motions. However, Rule 3(b), Ala. R. Disc. P., provides: “Except as otherwise provided in these Rules, the Alabama Rules of Civil Procedure and the Alabama Rules of Appellate Procedure shall apply.” As the State Bar maintains, Rule 12, Ala. R. Disc. P., sets forth in detail the procedures to be followed in disciplinary proceedings. Rule 12 does not provide for the filing of a post-disciplinary-proceeding motion. Consequently, the Alabama Rules of Civil Procedure are applicable in this regard.
 
 Peseau v. Civil Serv. Bd. of Tuscaloosa County,
 
 401 So.2d 79 (Ala.Civ.App.1981), and
 
 In re Anonymous,
 
 720 So.2d 497, 502 (Ala.1998) (Hooper, C.J., and Maddox, See, and Lyons, JJ., concur
 
 *38
 
 ring specially in part and dissenting in part)(“Although the general rule is that, in proceedings based -upon a statutory remedy,, the statute governs matters of procedure, an exception applies when the statute is silent, as the Parental Consent Statute is. -In that event the Rules of Civil Procedure fill the void, pursuant to Rule 81(a)(32), [Ala. R. Civ. P.].”).
 

 In accordance to Rule 3(b), Ala. R. Disc. P., the application of Rule 59, Ala. R. Civ. P., in disciplinary proceedings in which a post-disciplinary-proceeding motion is filed and considered is proper. Because Cooner filed his notice of appeal within 14 days of the denial of his post-disciplinary-proceeding motion for a new trial or, in the alternative, to open the judgment, his appeal was timely. We now consider the merits of Cooner’s appeal.
 

 Cooner contends that the Board’s order of disbarment does not contain specific findings of fact with regard to each allegation or each conclusion of misconduct and, therefore, that the order does not comply with Rule 4.2, Ala. R. Disc. P., and does not permit meaningful appellate review. Specifically, Cooner contends that the Board’s conclusion that he violated Rules 1.7(b), 8.4(a), and 8.4(g), Ala. R. Prof. Cond., is not supported by any specific findings of fact.
 
 [2]
 
 He further maintains that the Board’s order is inconsistent because the Board found him not guilty of violating any provision of Rule 1.15, Ala. R. Prof. Cond., which addresses the obligations of a lawyer to safeguard the property of a client or a third party, and yet concluded that disbarment was the appropriate sanction because “[sjafeguarding and accounting for funds belonging to third parties is an integral and essential duty of a lawyer.” Cooner argues that because the Board’s order indicates that its decision to disbar him was based on the “totality of the circumstances,” such inconsistencies in the order prevents this Court from determining if the judgment entered by the Board was supported by the facts.
 

 The State Bar disagrees, maintaining that the Board’s order substantially complies with Rule 4.2(b)(6)(C), Ala. R. Disc. P., and allows meaningful appellate review. In its brief to this Court, the State Bar states:
 

 “The Bar acknowledges that Section II of the order is not entitled ‘findings of fact,’ and that the paragraphs are not preceded by the statement, ‘The Disciplinary Board finds as follows.’ ”
 

 The State Bar, however, maintains that the recitation of the evidence indicates the evidence upon which the Board relied in reaching its conclusion. The State Bar further maintains that the section of the order entitled “Decision” provides the Board’s legal conclusions and findings of guilt or no guilt with regard to each of the charges.
 

 Rule 4.2(b)(6), Ala. R. Disc. P., provides: “The Disciplinary Hearing Officer shall make written findings of fact and conclusions of law as directed by the Disciplinary Board, which shall be captioned ‘Report and Order.’ The decision of the Disciplinary Board may be announced immediately after the conclusion of the proceedings....
 

 [[Image here]]
 

 “(C) The Report and Order shall contain:
 

 “(i)
 
 A finding of fact and conclusion of law as to each allegation of misconduct,
 
 which, upon acceptance by the Disciplinary Board, shall enjoy
 
 *39
 
 the same presumption of correctness as the judgment of a trier of fact in a nonjury civil proceeding in which , evidence has been presented ore tenus;
 

 “(ii) A finding as to whether the respondent attorney is guilty or not guilty of the misconduct charged; [and]
 

 “(ni) A finding as to the discipline to be imposed, with reference, where appropriate, to the Alabama Standards for Imposing Lawyer Discipline .... ”
 

 (Emphasis added.)
 

 We have reviewed the Board’s order and conclude that the order does not satisfy the requirements of Rule 4.2, Ala. R. Disc. P. A recitation of the evidence does not constitute a finding of fact as to each allegation of misconduct,, and the “Decision” section of the order does not contain conclusions of law as to each allegation of misconduct. Indeed, the Board’s order finds Cooner guilty of Charge IX, which alleges that he violated Rule 8.4(a), Ala. R. Prof. Cond., and yet a violation of Rule 8.4(a), Ala. R. Prof. Cond., is not included in the list of rules the Board concluded Cooner had violated. Because of the inadequacy of the Board’s order, we cannot conduct a meaningful review to determine whether the Board’s conclusion that Cooner violated Rules 1.7(b), 8.4(a), 8.4(c), and 8.4(g), Ala. R. Prof. Cond., is supported by clear and convincing evidence. Therefore, as to those violations, we reverse the Board’s order of disbarment and remand this cause with directions that the Board vacate its February 17, 2010, order of disbarment and enter a new order that complies with Rule 4.2, Ala. R. Disc. P. Cf.
 
 Alabama State Bar v. R.G.P.,
 
 988 So.2d 1005 (Ala.2008) (vacating an order of the Board of Disciplinary Appeals because the order did not provide the basis for reversing a panel’s disciplinary decision).
 

 Before this Court, Cooner conceded that the Board’s order with regard to the findings of fact and conclusions of law supporting the Board’s determination that he violated Rule 1.8(c), Ala. R. Prof. Cond., is sufficient for appellate review. Although we make no determination as to the adequacy of the factual findings of the order with regard to Cooner’s violation of Rule 1.8(c), Ala. R. Prof. Cond., in light of Coon-er’s concession that the order contains sufficient findings of fact in this regard, we consider Cooner’s argument.
 

 Cooner contends that, the Board erred in concluding that in preparing a trust instrument for his uncle, William B. Riley, he violated Rule 1.8(c), Ala. R. Prof. Cond. It is undisputed that Cooner was related to Riley by marriage, not by blood; that Cooner drafted an irrevocable trust for Riley; and that Cooner was named as one of the 13 beneficiaries of Riley’s residual estate in the trust instrument. Cooner maintains that the preparation of this trust by which he would or could receive a gift at Riley’s death does not violate Rule 1.8(c), Ala. R. Prof. Cond., because, he says, he was related to Riley. Cooner states that he presents a question of law this Court has not previously addressed: whether an uncle-nephew relationship established by marriage is encompassed within the term “related” as that term is used in Rule 1.8(c), Ala. R. Prof. Cond.
 

 The State Bar maintains that the Board did not err in finding Cooner guilty of violating Rule 1.8(c), Ala. R. Prof. Cond., because, it says, Cooner is not “related” to Riley. The State Bar argues that the terms “relative” or “related” as used in Rule 1.8(c), Ala. R. Prof. Cond., “refer to those only who are connected by blood.” Consequently, the State Bar reasons, because Cooner was related to Riley only by
 
 *40
 
 marriage, Cooner’s preparation of the trust instrument for Riley,' which provided that Cooner, at a minimum, would receive a l/13th share of the residuary of Riley’s estate, violated Rule 1.8(c), Ala. R. Prof. Cond.
 

 Cooner and the State Bar agree that because this issue does not involve a question of fact, but instead a question of law, this Court’s review is de novo.
 
 Tipler v. Alabama State Bar,
 
 866 So.2d 1126, 1137 (Ala.2003).
 

 Rule 1.8(c), Ala. R. Prof. Cond., provides:
 

 “A lawyer shall not prepare an instrument giving the lawyer or a person related to the lawyer as parent, child, sibling, or spouse any substantial gift from a client, including a testamentary gift, except where the client is related to the donee.”
 

 A “relative” is “[a] person connected with another by blood or affinity; a person who is kin with another.”
 
 Black’s Law Dictionary
 
 1315 (8th ed.2004). Thus, a person is “related” to another person, when the person is connected with another person by blood or affinity. In
 
 Kirby v. State,
 
 89 Ala. 63, 69, 8 So. 110, 111 (1889), this Court defined “affinity” as “the tie which arises from marriage betwixt the husband and blood relatives of the wife, and between the wife and the blood relatives of the husband.” Therefore, we conclude that “related” as that term is used in Rule 1.8(c), Ala, R. Prof. Cond., includes relationships by blood and by marriage and that an affinity relationship between an uncle and his nephew is within the meaning of the term “related.” .
 

 Moreover, we decline to hold, as the State Bar urges us to do, that, for purposes of Rule 1.8(c), Ala. R. Prof. Cond., an affinity relationship arising from the marriage between a husband and blood relatives of the wife terminates with the death of the wife: In support of its contention, the State Bar cites
 
 Hays v. Hays,
 
 946 So.2d 867 (Ala.Civ.App.2006). In
 
 Hays,
 
 the Alabama Court of Civil Appeals examined the familial relationship of a stepparent and a stepchild. The stepmother petitioned the probate court to adopt the adult biological daughter of her late husband. The daughter consented to the adoption; her biological mother objected. Section 26-10A-6(2)c., Ala.Code 1975, permits adult adoptions when the adult child “consents in writing to be adopted and is related in any degree of kinship, as defined by the intestacy laws of Alabama, or
 
 is a stepchild by marriage.”
 
 (Emphasis added.) The Court of Civil Appeals “narrowly deeide[d] this case by examining the legal relationship of a stepparent and a stepchild and the plain-language definition of a ‘stepchild by marriage.’ ” 946 So.2d at 869. The Court of Civil Appeals held that the legal relationship between the stepparent and the stepchild is extinguished upon the death of the stepparent’s spouse, i.e., the stepchild’s natural parent, because a stepparent’s affinity relationship with a stepchild terminates upon the death of the natural parent. Additionally, the Court of Civil Appeals concluded that an examination of the plain meaning of the phrase “a stepchild
 
 by
 
 marriage” established that “ ‘a stepchild by marriage’ connotes a relationship that is established through the marriage or during the course of the marriage. When the marriage is no longer in existence, the stepparent-stepchild relationship is likewise extinguished.” 946 So.2d at 870. The Court of Civil Appeals’ holding is confined to the interpretation of,a statute and is limited to the meaning of the phrase “a stepchild by
 
 *41
 
 marriage.” Consequently, we do not find the decision in
 
 Hays
 
 applicable to this Court’s interpretation of the term “related” as that term is used in Rule 1.8(c), Ala. R. Prof. Cond.
 

 The undisputed evidence indicates that Cooner was related to Riley by marriage; therefore, Cooner’s preparation of the trust instrument did not violate Rule 1.8(c), Ala. R. Prof. Cond. The. Board’s decision that Cooner violated Rule 1.8(c), Ala. R. Prof. Cond., is reversed.
 

 Lastly, Cooner maintains that the Board erred in denying his motion for a new trial or, in the alternative, to open the judgment. The Board summarily denied Coon-er’s motion; therefore, we cannot determine whether the Board concluded that the filing of such a motion following a disciplinary proceeding was improper or that Cooner was not entitled to relief on the merits. Because it is unclear whether the Board denied Cooner’s motion on the merits or because it concluded that the filing of such a motion was improper and because we are reversing the Board’s order of disbarment, we decline to address Cooner’s arguments that the Board’s denial of his motion for a new trial or, in the alternative, to open the judgment was error. When the Board issues its new order, Cooner will have an opportunity to challenge the judgment, pursuant to Rule 3(b), Ala. R. Disc. P., and Rule 59, Ala. R. Civ. P.; therefore, consideration of this issue at this time is not proper.
 

 Conclusion
 

 Based on the foregoing, the judgment of the Board is reversed, and this cause is remanded for proceedings consistent with this opinion.
 

 REVERSED AND REMANDED WITH DIRECTIONS.
 

 COBB, C.J., and LYONS, WOODALL, SMITH, BOLIN, PARKER, MURDOCK, and SHAW, JJ., concur.
 

 [1]
 

 . Although the order indicates that Cooner was found guilty of Charge IX of the State Bar’s complaint, the Board's order does- not make a specific finding, when listing the rules that he violated, that he violated Rule 8.4(a), Ala. R. Prof. Cond.
 

 [2]
 

 “2 Both Mr. Furr and Leslie Bari-neau, who was appointed Guardian ad Litem, testified that Mr. Cooner did not appear at the hearing set on his motion, giving the excuse that he had to attend an immigration hearing in Atlanta, obviously the same excuse he gave for not attending this hearing.”
 

 [2]
 

 . Cooner concedes that the findings of fact and conclusions of law in the Board’s order .with regard to the Board’s determination that he was guilty of violating Rule 1.8(c), Ala. R. Prof. Cond., are sufficient for appellate review. See discussion
 
 infra.